[Crim. No. 928.   Fourth Dist.   Nov. 24, 1953.]

THE PEOPLE, Respondent, v. ELLSWORTH W. WHITNEY, Appellant.

John R. Nixon for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Leo J. Vander Lans, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was found guilty of grand theft by embezzlement, and he has appealed from the judgment and from the order denying his motion for a new trial.

The complaining witness, Smith, became of age in 1943, and entitled to the possession of a trust fund of some $200,000 which was being held for him by a Detroit bank. Since he was 16 years old he had been intimately acquainted with the defendant, having lived in his home at times, and had looked to him for advice and counsel. In 1944 he gave the defendant a general power of attorney and it was agreed between them that the defendant, who was in the real estate business, would manage and invest his funds for him. There was no agreement for any salary, but it was agreed that the defendant was to be reimbursed for any expenses he incurred. During the next three or four years the entire $200,000 was brought to this state and most of it was handled by the defendant. Large amounts were invested in various properties, title being taken in defendant's name, and at times large amounts were deposited in defendant's personal bank account. During this period Smith traveled a good deal and considerable amounts were furnished him by checks drawn by the defendant. Smith kept no books, and paid little attention to what was being done with his money. He knew of some of the investments, and that titles were taken in defendant's name, but left practically everything to defendant's judgment and signed anything he was asked to sign. Finally, foreclosures and other litigation began and Smith, discovering that his money was all gone, revoked the power of attorney. Apparently, neither party had anything left out of these funds.

The evidence discloses a rambling series of financial transactions, but this charge and the trial were centered upon what was done in connection with one item of $45,000. The information charged the defendant with grand theft in that on or about June 18, 1947, he feloniously took and stole ''a sum of

money in excess of $200,'' the property of Smith. Shortly prior to that date the defendant recommended to Smith the purchase of an automobile agency for $80,000, a down payment of $45,000 being required. Smith was anxious to make the deal provided that one Cooper would agree to manage the agency. Cooper declined, and Smith dropped the deal. In anticipation of this deal the defendant had withdrawn $45,000 from the funds in the Detroit bank. On June 18, 1947, he deposited this $45,000 in his own bank account, which was overdrawn in the amount of $13.16. On the same day, June 18th, he used $1,611.07 of that money to pay two notes which he personally owed to that bank. On the next day, June 19th, he had Smith sign a written authorization for him to endorse the $45,000 check, which he had already done, and also purchased a cashier's check payable to himself for $1,000. Shortly thereafter, he used $5,516 of that money in purchasing an interest in a shingle mill, in his own name, and used $10,500 in connection with a ranch in Oregon which had previously been purchased with Smith's funds in the same manner.

There is evidence that at times Smith told other people that he owned these various properties, and that at times the defendant claimed to be the owner of some of them. While the record is voluminous, about 1,200 pages, it fails to disclose just what was done with respect to any of these properties, and there is no evidence that anything resembling a satisfactory accounting was ever made. While it discloses that a large amount was ultimately lost to Smith, it is very unsatisfactory with respect to any showing as to what portion of the total amount was received and used by Smith, what part was lost through poor judgment in making investments, what part was actually used by the defendant for his personal benefit, or what part was due him for expenses. The defendant did not take the witness stand, and offered no explanation of such amounts as were shown to have been personally used by him. There was evidence that both Smith and the defendant had at times taken a position with respect to some of these matters which was different from the position taken at other times.

The defendant first contends that the evidence is not sufficient to support the verdict. It is argued that Smith knew that the $45,000 had been brought here; that when the automobile agency deal fell through he gave the defendant no new instructions as to its use; that the defendant had a general power of attorney, and was authorized to handle the money

in accordance with the course previously followed; that there is no evidence as to the amounts received by Smith from Whitney during the period in question, and no evidence as to the amounts due to Whitney for expenses in transacting Smith's business; that Smith knew of the investment in the shingle mill and in the Oregon ranch, and claimed an interest therein; and that while the evidence may have been sufficient to show conversion in a civil action, it is not sufficient to establish the fraudulent appropriation of a particular sum required in a criminal action.

The $45,000 check was deposited in the defendant's bank account at a time when that account was overdrawn. He immediately used some $1,600 of that money to pay his personal debts, and took another $1,000 for purposes not explained. There is no evidence that anything was then due him as reimbursement for any expense incurred. In the absence of any explanation it might reasonably be inferred that the defendant converted these sums to his own use in violation of his trust, and an inference could probably be drawn that the defendant fraudulently appropriated a sufficient amount on June 18, 1947, to constitute grand theft. There is also evidence that the defendant shortly before the trial endeavored to suppress certain evidence which might tend to show a consciousness of guilt. (*People* v. *Downs*, 114 Cal.App.2d 758 [251 P.2d 369].) However, in view of the evidence as a whole, a close question was presented as to whether the taking of such an amount at about that date constituted a fraudulent appropriation in the criminal sense, or merely an unlawful conversion in the civil sense.

It is next contended that the court erred in instructing the jury. It is argued that the court failed to instruct the jury as to what constitutes grand theft, the only kind with which the defendant was charged; that by one instruction it directed a verdict of guilty if the jury found that the defendant had fraudulently appropriated an amount less than $200; that it erred in quoting sections of the Civil Code, relating to the duties of a trustee, without properly qualifying their relation to criminal liability; that it erred in repeatedly giving an instruction as to "the four essential elements of the offense of embezzlement" although that instruction omitted any mention of fraudulent appropriation; that the effect of these errors was to leave it to the jury to convict the defendant if it found that he had in any way violated his trust; and that these errors

were necessarily prejudicial under the circumstances here appearing.

In its first instruction the court told the jury that the defendant was charged with grand theft in taking and stealing a sum in excess of $200, the property of Smith. The sum of $200 was not otherwise mentioned and no instruction was given as to the distinction between grand and petty theft. After other general instructions the court gave this instruction:

"You are instructed that the four essential elements of the offense of embezzlement are: (1) That defendant was acting in the capacity of an agent; (2) that he obtained and held the money in his trust capacity; (3) that the money belonged to his principal; and (4) that he converted it to his own use in violation of his trust."

The court then gave an instruction which, after quoting sections 2228, 2229 and 2233 of the Civil Code, relating to the duties of a trustee, stated: "This instruction has been given solely for the purpose of showing the degree of responsibility, which the laws of (this state) impose upon a trustee." The court then gave an instruction which, after stating that one who is entrusted with trust funds and who fraudulently appropriates the same to his own use is guilty of embezzlement, reads:

". . . and in this case if you find from the evidence to a moral certainty and beyond a reasonable doubt that the defendant did unlawfully, fraudulently and feloniously convert, embezzle and appropriate the money mentioned in the information, or any part thereof, to his own use and contrary to his trust as such agent, then your verdict must be guilty." After other general instructions the jury was sent out.

After being out four hours and 25 minutes, the jury returned and the foreman asked the court to read that part of the instructions "covering the law constituting theft or embezzlement." The court then defined theft and embezzlement by reading the material portions of section 484 and 506 of the Penal Code, and repeated the "four essential elements" instruction as above quoted. The court then reread sections 2228 and 2229 of the Civil Code and stated that he had given the jury those sections merely for the purpose of showing the attitude of the law toward the duties imposed upon a trustee; that he had also given it the Penal Code sections; that one may be "liable civilly for some conduct, but not necessarily criminal"; and that "you should be governed in this case by the

law as I have given it to you from the Penal Code with respect to embezzlement and the four elements of that offense which I have given to you." The court then asked if there were any other questions, and the foreman of the jury asked "would you read those four elements again?" The court then said: "The four elements of the offense of embezzlement are as follows: (repeating the four elements as above given)," and then said: "In other words, those are the four items you have to have in mind, the agency, having the money that belongs to somebody else and the conversion of it." The jury then retired, and in 21 minutes brought in a verdict of guilty as charged in the information.

The instruction in which the jury was told that it must find the defendant guilty if it found that he fraudulently took the money mentioned in the information "or any part of it" is clearly erroneous since it authorized a conviction of grand theft regardless of the amount taken. It might be that this error, standing alone, would not require a reversal in view of the evidence and the provisions of section 4½ of article VI of the Constitution. The other errors, in repeatedly emphasizing the Civil Code provisions and, in connection therewith, that a certain four items were controlling, are more serious.

The "four elements of the offense of embezzlement," thus emphasized by the court, are appropriate in a civil action for a violation of a trust, and also have a bearing in a criminal prosecution for theft by embezzlement. But they omit the most important element required by the Penal Code sections, the appropriation of such property with fraudulent intent. By the instructions thus given and emphasized the jury would naturally understand that any conversion of the trust property was sufficient to establish the criminal offense of embezzlement. The jury was evidently confused with respect to these very matters when it returned and asked for further instructions. After these were given and when the court asked if there were other questions, the foreman asked to have the "four elements" instruction read again. Not only was this done, but the court went on to state that "in other words" these four items were the ones "you have to have in mind." Not only were these instructions misleading, but it can hardly be doubted that they were prejudicial since a verdict was then returned in a few minutes. This overemphasis of a part of the essential elements involved seems to have resulted in removing the precise doubt which was

in the minds of the jurors. In principle, the situation here was very similar to that involved in the case of *People* v. *Hatch,* 13 Cal.App. 521 [109 P. 1097].

This defendant had been given very broad powers as shown by the general power of attorney and the manner in which the business was conducted for several years, most of it with the knowledge of Smith and without objection on his part.

While the defendant was subject to the obligations imposed by law upon a trustee, there is a difference between a mere violation of a trust and the fraudulent appropriation which will constitute embezzlement by theft. In view of the condition of the evidence and the distinctions which the jury was required to make, it was important that the jury be correctly instructed with respect to the controlling issues. The defendant was entitled to a fair trial, without any confusing element which would naturally tend to mislead the jury.

The judgment and order are reversed, and the cause remanded for a new trial.

Griffin, J., and Mussell, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 23, 1953. Edmonds, J., and Traynor, J., were of the opinion that the petition should be granted.