[Crim. No. 14193. Second Dist., Div. One. Apr. 23, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. CARL ROBIN ROTH, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Appellant.

Harry C. Murphy for Defendant and Respondent.

LILLIE, J.—Defendant was charged with possession of marijuana (§ 11530, Health & Saf. Code). Under section 995, Penal Code, he moved to dismiss the information. The People appeal from order granting defendant's motion and setting aside the information.

The following is a summary of the testimony taken at the

preliminary hearing and considered by the superior court in making the order.

On July 25, 1967, around 9:45 a.m., Officer Britton, California Highway Patrol, was stopped by a passing motorist who told him that a Volkswagen had rolled over; "almost before the dust was settled," he arrived at the scene on Highway 101 near San Luis Obispo. Five minutes later Officer Lee arrived to assist him. In the number one lane northbound near another vehicle was a Volkswagen resting on its wheels, facing west; three persons had been thrown from the vehicle —a baby, a woman lying on the pavement and defendant who was up but in quite a bit of pain. Officer Britton took certain registration information from the Volkswagen and a quick glance to see its position; the contents "were all messed up inside" and "there was quite a lot of personal belongings." He watched the vehicle and saw no one enter it. The Volkswagen was registered to Robert Lund in Lakewood. All occupants were removed to an ambulance.

Officer Lee, California Highway Patrol, saw the ambulance remove the injured occupants and volunteered to diagram the accident, store the Volkswagen and make the storage report on the vehicle. The contents of the vehicle were "messed up inside, ruffled." He made a diagram of the accident and measured the distances, then instructed a tow truck operator to hook up the Volkswagen and take it to his shop; Officer Lee followed behind it to Jim's Body Shop. The vehicle was not out of his sight and he saw no one place anything in it. When the tow truck reached its destination, Officer Lee began an inventory filling out official Form 180—inventory and storage report. The contents of the Volkswagen had been "bounced around a great deal and roughed up"; one by one he sorted out the items in the car and listed them on the report— suitcase containing miscellaneous clothing, wrist watch case, cloth coat, brown suede coat, red wallet with miscellaneous papers, empty leather toilet case, baby blankets, Norelco shaver, long playing record, books, car bed, stroller frame, plastic laundry bucket, various toilet articles, etc. In the course of the inventory Officer Lee removed a man's dark coat lying loosely on the back seat of the Volkswagen. As he picked it up the coat felt "heavy on one side" so he reached in one of the pockets and found a black wallet containing defendant's driver's license on which was his name, San Francisco address, and photograph, and a quantity of money. Then he looked through the coat for money and found in the right top

pocket a loose one-dollar bill, in the front pocket a passport bearing defendant's name and photograph and in the left inside pocket of the coat a pouch "similar to one that tobacco might be carried in." As to the contents of the pouch, the officer testified, "I didn't know what it was at the time, whether it was money—"; he opened it and found a green leafy substance that appeared to be marijuana. Also in the coat were a brush and two pens. Officer Lee testified that no one requested him to search the vehicle or search it for marijuana, and he was not looking for narcotics but was merely inventorying the contents of the vehicle in compliance with the "common practice with the Highway Patrol when storing a vehicle that has been in an accident to make an inventory of the contents on the Form 180."

It was stipulated that the report of Agent Kvick, State Bureau of Narcotic Enforcement, which revealed that the contents of the pouch had been analyzed and found to be marijuana, could be used in place of the agent's testimony.

The superior court granted defendant's motion on two grounds: (1) "this is a matter in which you ought to get a search warrant," citing *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], and (2) "there's no connection with defendant and the evidence which was seized"; and directed several personal comments to defendant.[1]

It is our view that the superior court erred in setting aside the information. ■■■ First, the discovery of the contraband was not the result of a search but of a routine measure taken by Officer Lee in the performance of his official duty to protect the Volkswagen and its contents lawfully in the custody of the California Highway Patrol. ■■■ Second, this is not a situation in which a search warrant should have been obtained as suggested by the superior court; there was neither reason nor necessity for Officer Lee to obtain a search warrant. He had no reason to believe contraband was in the vehicle and was not looking for narcotics; no one requested him to make a search and he was not conducting one; he did

---

[1] "I just want to say one thing to that young man, and that is, I'm sorry I have to grant the motion. Some day, some place, you keep this behavior up and you'll be in the penitentiary. You are one of the smart, young men that knows all the answers. Marijuana is okay and pot is okay and that's fine, but some day you'll run up against somebody and you'll be put in jail for a long, long time, and you think up the answers for that when you get to it.

"Mr. Roth: Thank you.

"The Court: Don't thank me. I'm sorry I have to grant the motion. It's the courts up above that say I have to do it. I'm not happy about it at all."

not suspect any occupant of the Volkswagen of having committed a crime and no one had been arrested. Finally, if the protective measure of sorting out the contents of the Volkswagen lawfully in the custody of the California Highway Patrol and inventorying the same for safekeeping is to be considered a search, the reason for and nature of the custody and the circumstances surrounding the entry of the vehicle made the search reasonable.

 The record establishes that the Volkswagen had to be removed from the highway for two reasons—first, the accident, in which the vehicle most likely rolled over several times, left it standing in such a position in the number one lane of a heavily traveled highway as to obstruct the normal movement of traffic (Veh. Code, § 22651, subd. (b))[2] and create a hazard; and second, those in charge of the vehicle, by reason of personal injuries, had become incapacitated and unable to provide for its custody or removal (Veh. Code, (§ 22651, subd. (g)).[3] Moreover, our Supreme Court has recognized the right of the police to take custody of a vehicle blocking the highway and creating a danger to motorists. (*People* v. *Grubb,* 63 Cal.2d 614, 619 [47 Cal.Rptr. 772, 408 P.2d 100] ; *People* v. *Webb,* 66 Cal.2d 107, 125 [56 Cal.Rptr. 902, 424 P.2d 342] ; *People* v. *Williams,* 67 Cal.2d 226, 230 [60 Cal.Rptr. 472, 430 P.2d 30].) Thus, Officer Lee had the right to and did remove the Volkswagen from the highway to a place of safety for the purpose of placing it in storage. (Veh. Code, § 22850.)[4]

 Further, the record establishes that numerous articles of a personal nature and of obvious value to the owners, having been bounced around as the result of the accident, were left exposed and lying in loose disorder inside the Volkswagen. Thus, before storing the vehicle, for his own protection as well as for the protection of the owners and the garageman, and for the safekeeping of the property Officer Lee sorted out

[2]Section 22651, Vehicle Code: ''Any member of the California Highway Patrol . . . may remove a vehicle from a highway under the following circumstances:

''(b) When any vehicle is left standing upon a highway in such a position as to obstruct the normal movement of traffic.''

[3]Section 22651, Vehicle Code: ''(g) When the person or persons in charge of a vehicle upon a highway are by reason of physical injuries or illness incapacitated to such an extent as to be unable to provide for its custody or removal.''

[4]Section 22850: ''Whenever an officer removes a vehicle from a highway . . . he shall take the vehicle to the nearest garage or other place of safety . . . where the vehicle shall be placed in storage.''

the contents and listed each article on an official inventory form. Under the circumstances it was a normal and reasonable act for the officer, undoubtedly an involuntary bailee of the property and responsible for the vehicle and its contents (§§ 1813, 1815, 1816, 1817, Civ. Code; *People* v. *Gonzales,* 182 Cal.App.2d 276, 279 [5 Cal.Rptr. 920]), to enter the Volkswagen, list the items and provide safe storage for them until the owners were able to take charge. (*Cooper* v. *California,* 386 U.S. 58, 61-62 [17 L.Ed.2d 730, 733-734, 87 S.Ct. 788]; *People* v. *Harris,* 256 Cal.App.2d 455, 461 [63 Cal.Rptr. 849].) Too, this is the "common practice with the Highway Patrol in storing a vehicle that has been in an accident to make an inventory of the contents in the Form 180." Having found in one pocket a billfold containing a driver's license and a quantity of money, and in another a loose one-dollar bill, it was only reasonable for the officer to look through the coat and its contents to be sure he had not overlooked other valuables; when he discovered the pouch he "didn't know what it was at the time, whether it was money," and opened it. Had he not listed the valuables in the coat, it is not inconceivable that later the owner would claim that he left a great sum of money or other item of value in his coat which is missing. (*People* v. *Posada,* 198 Cal.App.2d 535, 539 [17 Cal. Rptr. 858].) ▮▮▮ It is readily apparent that Officer Lee was making no "search" of the Volkswagen; he was not looking for narcotics; all he did was make an inventory of the contents that they could be stored in a place of safety; and in the course of his official duty he discovered the contraband.

That the discovery of the contraband was not the result of a search of the Volkswagen but of a measure taken to protect the car and its contents which were lawfully in the officer's custody finds support in *Harris* v. *United States,* 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992] decided by the United States Supreme Court March 5, 1968. Harris' automobile had been traced leaving the site of a robbery; he was arrested as he entered it near his home. The police impounded the car as evidence and a crane was called to tow it. The windows were open and the car was unlocked and it had begun to rain. A regulation of the Metropolitan Police Department, District of Columbia, requires an officer who takes an impounded vehicle in charge to search it thoroughly and remove all valuables from it and attach to the vehicle a property tag listing certain information pursuant to this regulation. Without a warrant the arresting officer proceeded

to the impound lot to search the vehicle, place a property tag on it, roll up the windows and lock the doors. In the process of securing the windows and doors he saw inside the car a registration card belonging to the robbery victim. Said the court: ''The sole question for our consideration is whether the officer discovered the registration card by means of an illegal search. We hold that he did not. The admissibility of evidence found as a result of a search under the police regulations is not presented by this case. The precise and detailed findings of the District Court, accepted by the Court of Appeals, were to the effect that the discovery of the card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.''

 However, if the customary protective measure used by the California Highway Patrol to safeguard the vehicle and its contents while lawfully in its custody be considered a search within the Fourth Amendment of the United States Constitution, under the conditions here presented it was not unreasonable even though at the time no arrest was made or contemplated. Analogous to the emergency conditions created by the accident and the injury and hospitalization of the occupants of the Volkswagen necessitating the taking and listing of their property for safekeeping, are those arising from the emergency hospitalization of an unconscious patient necessitating a search of his clothing and the taking and listing of the property found on his person by hospital employees for safekeeping. In *People v. Gonzales*, 182 Cal.App.2d 276 [5 Cal.Rptr. 920], defendant, found unconscious with a severe knife wound, was taken to the hospital for surgery; in the course of a search of his clothing for identification marijuana was found. The search was upheld as reasonable, the circumstances justifying the search even though no arrest was made or contemplated at the time; and the marijuana accidentally found in the course of a reasonable search for the purpose of identifying the patient and safeguarding his property was held to be admissible. Thus, under Penal Code, section 11160, a hospital must report to the police the facts concerning a wound of this kind; under section 10275, Health and Safety Code, it must make a patient's record sufficient and adequate for completion of a death certificate; and under sections 1815 and 1816, Civil Code, ''a hospital would undoubtedly become the involuntary bailee of property carried on the person of an

unconscious patient brought to it under conditions of emergency such as are here presented. To take such property from the clothing of the patient, make a written list of it and put it in a safe place or hands for preservation would be the normal and reasonable act of a hospital attendant for the protection of both the hospital and the patient. . . ." (Pp. 279-280.) Similarly in *People* v. *Posada,* 198 Cal.App.2d 535 [17 Cal. Rptr. 858], "It would seem to be only common sense for a receiving hospital to check out a patient's property, wrap it into one bundle and provide safe storage therefor until the patient is able to be about on his own. Otherwise it is not inconceivable that some patient might later on be claiming that he had great sums of money or diamonds or other items of great value in his belongings when he was being cared for and that when he was ready to leave the valuables were missing. . . . In this case the nurses were doing exactly what they were supposed to be doing and located, in the course thereof, what they thought was marijuana. When the officer arrived on the accident investigation the nurses properly pointed to him what they had seen. . . . A police officer is not expected deliberately to overlook contraband." (Pp. 539-540.) (See also *People* v. *Gomez,* 229 Cal.App.2d 781, 783 [40 Cal.Rptr. 616].)

Clearly holding the inventory made by Officer Lee to be a search, the superior court concluded that it was illegal within the doctrine of *Preston* v. *United States,* 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881], and *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67]; and that this was a matter for a search warrant. At the outset it should be noted that there was neither reason nor necessity for Officer Lee nor anyone else to obtain a search warrant. No one had been arrested; there was no reason to suspect any occupant of the Volkswagen of having committed a crime; no one had reason to believe contraband was in the vehicle; no one requested Officer Lee to conduct a search and in making the inventory he was not looking for narcotics.

*Preston* v. *United States,* 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881], holds that once an accused is arrested and in custody a subsequent warrantless search of his car in a police impound garage is too remote in time and place to have been incident to the arrest. On the basis of *Preston,* the California Supreme Court decided *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67]. Defendant was arrested because of his unexplained suspicious actions in a high frequency

burglary area; his car was searched by the officers but they could not open the trunk; nine hours later the trunk was searched without a warrant in the police impound lot. "Where officers are not responding to an emergency there must be compelling reasons and exceptional circumstances to justify a search in the absence of a search warrant. [Citation.]" (61 Cal.2d at p. 578.) Thus the court held the search of the car at the time and place of arrest to be lawful as incident to the arrest but the search of the trunk in the impound lot to be unlawful as too remote in time and place to be incident to defendant's arrest. Further, the court observed that the right to remove the vehicle from the highway under section 22651 subd. (h), Vehicle Code, and to impound it under section 22850, does not authorize the making of a search. (P. 578.)

Subsequent cases (*Cooper* v. *California*, 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788]; *People* v. *Webb*, 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342]) have distinguished *Preston* and *Burke* and qualified language therein which suggested an inflexible requirement of a warrant unless a search of the vehicle was incident to a lawful arrest. In *Cooper* v. *California*, 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788], upon petitioner's arrest for a narcotic violation, the police impounded his automobile and held it in an impound garage for institution of forfeiture proceedings. A week later a search of the vehicle without a warrant resulted in the discovery of narcotics in the glove compartment; it was conceded that the search was not incident to the arrest. Petitioner contended, and the California court ruled, that the forfeiture statute (§ 11611, Health & Saf. Code) does not authorize a search of a vehicle. The court said: "But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one. While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' *ibid.*, the reason for and nature of the custody may constitutionally justify the search." (386 U.S. at p. 61 [17 L.Ed.2d at p. 733].) *Preston* was distinguished in that he had been arrested for vagrancy, the custody police had of his car was totally unrelated to the vagrancy charge, and

no one sought to justify the search of the car on the ground that it was in lawful police custody. ''Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. . . . The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. *It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it.* It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' [Citation.] Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding.'' (Italics added; 386 U.S. at pp. 61-62 [17 L.Ed.2d at pp. 733-734].)

Thereafter, the California Supreme Court in *People* v. *Webb,* 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342], distinguished *Burke* and *Preston* on the ground that the search in each of those cases was general and exploratory in nature, a search for evidence of a crime police did not yet know defendant had committed and ''in neither case was there any emergency which would have made it dangerous or otherwise *unreasonable* for the officers to have searched the entire car at the time and place of the arrest.'' (Pp. 124-125.) The officers arrested defendant (for whom a warrant was outstanding) who abandoned his car which had crashed into another vehicle blocking oncoming traffic. Police began a search of the car finding heroin on the floor but because a large crowd had gathered thought it best to continue the search elsewhere; later they did so at the impound lot and found other contraband in the vehicle. The court held that the officers had the right to continue the search of the vehicle as an incident to the arrest; that under the totality of the circumstances the search was reasonable and the delay for reason of convenience did not necessarily render it unreasonable; and that a vehicle creating a hazard to traffic should immediately be removed from the highway citing *People* v. *Grubb,* 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100]. An alternative ground of decision was the right of police to impound the car for forfeiture under section 11611, Health and Safety Code, and the rea-

sonableness of the search under *Cooper* v. *California*, 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788].

▮ As to the applicability of *Preston* v. *United States*, 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881] and *People* v. *Burke*, 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], to the evidence here, while we find nothing in *Cooper* v. *California*, 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788], or *People* v. *Webb*, 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342], directly overruling *Preston* or *Burke*,[5] and it is clear that lawful custody of an automobile does not itself dispense with constitutional requirements of a search thereafter made of it, it appears that *Cooper*, *Webb*, and subsequent authorities concede that the reason for and nature of the custody of a vehicle may constitutionally justify a search of one lawfully in the possession of the police. (*People* v. *Williams*, 67 Cal.2d 226, 229-231 [60 Cal.Rptr. 472, 430 P.2d 30]; *Perez* v. *Superior Court*, 250 Cal.App.2d 695, 699 [58 Cal.Rptr. 635]; *People* v. *Upton*, 257 Cal.App.2d 677, 682-683 [65 Cal.Rptr. 103]; *People* v. *Harris*, 256 Cal.App.2d 455, 461 [63 Cal.Rptr. 849]; *People* v. *Norman*, 252 Cal.App.2d 381, 388-391 [60 Cal.Rptr. 609]; *People* v. *Prochnau*, 251 Cal.App.2d 22, 28-30 [59 Cal. Rptr. 265]; *People* v. *Lozano*, 250 Cal.App.2d 58, 59-60 [58 Cal.Rptr. 102].)

*People* v. *Grubb*, 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100], involved entry of defendant's abandoned car parked on the wrong side of the road protruding at an angle into the main traveled portion of a two-lane highway by police to look for a registration slip where a "billy" was discovered. "As to defendant's claim of an alleged unlawful police entry of the vehicle, we point out that we have recognized that officers need not invariably and under every circumstance obtain a search warrant to enter an automobile. [Citation.] We have

---

[5]This, however, is not the opinion expressed by Mr. Justice Douglas in his dissent to *Cooper* v. *California*, 386 U.S. 58 [17 L.Ed.2d 777, 87 S.Ct. 788]. "[The] case is on all fours with *Preston*" so far as police custody is concerned. (P. 64 [17 L.Ed.2d p. 735]), "I see only two ways to explain the Court's opinion. One is that it overrules *Preston sub silentio*. . . ." (P. 65 [17 L.Ed.2d p. 735]); nor that expressed by Mr. Justice Peters in his concurring opinion in *People* v. *Webb*, 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342], "I interpret that decision [*Cooper*], as do the four dissenting justices (386 U.S. at p. 65 [17 L.Ed.2d at pp. 735-736]), as overruling *Preston* v. *United States*, 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881]. No longer need a warrant be secured if a search is not incidental to a lawful arrest but is separated from the arrest both in time and space. A search is now permissible without a warrant if the vehicle is in valid police custody. In the instant case the vehicle was undoubtedly in the valid custody of the police. The search was, therefore, proper under *Cooper*, *supra*." (P. 128.)

upheld an entry without a warrant if 'compelling reasons and exceptional circumstances' justify it. [Citations.] Although the justification for a search without a warrant usually lies in its incidence and relationship to a lawful arrest [citations], here we find the warrantless entry sustained by extraordinary and exceptional circumstances. [Citation.]'' (P. 618.) The court held that the unusual circumstances raised the probability that the car had been stolen, thus, the officers could properly enter it to investigate the title and registration. Further, it observed: ''A requirement that under circumstances such as these the officers must leave the car on the highway until they obtain a search warrant would abort their efforts to protect the safety of the highways. [Citation.]'' (P. 619.)

The conduct of defendant in *Perez* v. *Superior Court,* 250 Cal.App.2d 695 [58 Cal.Rptr. 635], was held to constitute ''extraordinary and exceptional circumstances'' which afforded reasonable cause for an investigation of his automobile. (P. 699.) Defendant and his companion had parked in a dark vacant lot; when the officers flashed a light on them they deserted the vehicle. In *People* v. *Williams,* 67 Cal.2d 226 [60 Cal.Rptr. 472, 430 P.2d 30], after a burglary had been committed defendant abandoned his car in an intersection; an officer pursued and arrested him while the other officer opened the trunk in which he saw a number of men's suits. The vehicle was taken to a police storage garage where the contents were inventoried. The trunk contained 29 suits bearing a label of a burglarized men's store. The court held the subsequent inventory and seizure at the police impound as '' 'a continuation of the search lawfully begun at the time and place of arrest.' '' (P. 229.) The court distinguished *Preston* and *Burke* and relied on *People* v. *Webb.* A citizen in *People* v. *Harris,* 256 Cal.App.2d 455 [63 Cal.Rptr. 849], witnessed defendant hit another vehicle, pursued and stopped him and called the police. The officers arrested defendant for hit-and-run and saw articles in the vehicle which defendant identified as belonging to him. Later the officers took a burglary victim to defendant's car where he identified the articles as having been stolen from him. Said the court at page 461: ''The officers had the valid custody of the automobile. As an instrumentality of the hit-run offense it was important and perhaps necessary evidence. The police had a right to seize and hold it for such purposes. [Citations.] Since defendant was under arrest it was the duty of the officers to take

him before a magistrate without unnecessary delay. (Pen. Code, §§ 847, 849.) For that reason the officers were authorized by Vehicle Code, section 22651 subdivision (h) to remove the car from the street and to impound it. [Citations.] *Having such custody of the automobile, the officers might properly make an inventory of its contents for the protection of the defendant, the garageman and the police.* [Citations.]" (Italics added.)

In the foregoing cases it was the arrest of defendant that made the subsequent removal and custody of his automobile by police lawful. While defendant was not arrested, the removal of the Volkswagen nevertheless was authorized under section 22651 subdivisions (b), (g), Vehicle Code, as a result of which the California Highway Patrol had lawful custody of the vehicle for stoaage. (§ 22850, Veh. Code.)

 Considering the reason for and nature of the custody, it would be unreasonable to hold that the California Highway Patrol, having to retain the vehicle and its contents in custody, had no right even for its own protection to make an inventory of the contents. The circumstances created by the condition of the numerous articles of a personal nature in the vehicle and their obvious value, the inability of the injured occupants to take charge of their property and the undetermined length of time the owners would be incapacitated warrant the entry and inventory of the contents of the Volkswagen as reasonable under the Fourth Amendment.

 Proceeding to the issue of whether there was sufficient cause to hold defendant to answer the charge, "it must be emphasized at the outset that the elements of an offense . . . need not be established beyond a reasonable doubt in order to hold a defendant to answer following a preliminary examination. It is provided in section 872 of the Penal Code that a defendant must be held to answer if 'it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof. . . . ,' and the latter phrase, 'sufficient cause,' is equivalent in meaning to 'reasonable or probable cause.' [Citation.] As we stated in *Rogers* v. *Superior Court*, 46 Cal.2d 3, 7-8 [291 P.2d 929], ' "[s]ufficient cause" and "reasonable and probable cause" mean such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' Moreover, ' " [r]easonable and probable cause" may exist although there may be some room for

doubt.' '' (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Upton,* 257 Cal.App.2d 677 [65 Cal.Rptr. 103]; *People* v. *Sullivan,* 214 Cal.App.2d 404. 409 [29 Cal.Rptr. 515].)

■ On a preliminary hearing the magistrate is required to weigh the evidence and pass on the credibility of witnesses in determining whether sufficient cause has been established.

■ When a superior court reviews this decision under section 995, Penal Code, it may not substitute its judgment as to the weight of the evidence at the preliminary hearing nor judge the credibility of witnesses. (*Perry* v. *Superior Court,* 57 Cal.2d 276 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Swansboro,* 200 Cal.App.2d 831, 835 [19 Cal.Rptr. 527]; *People* v. *Akard,* 215 Cal.App.2d 182, 185 [30 Cal.Rptr. 69]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 271 [294 P.2d 23].) If there is some competent evidence to support the information, the court will not inquire into its sufficiency. [11] The information will be set aside on the basis of insufficient cause only where there is no evidence that a crime has been committed or there is no evidence to connect defendant with the crime. (*People* v. *Fitch,* 189 Cal.App.2d 398, 402 [11 Cal.Rptr. 273]; *Weber* v. *Superior Court,* 35 Cal.2d 68, 69 [216 P.2d 871]; *People* v. *Upton,* 257 Cal.App.2d 677, 686 [65 Cal.Rptr. 103].)

■ Applying the above standards we conclude that the evidence before the magistrate amply supports his findings that there is probable cause to believe a violation of section 11530, Health and Safety Code, has been committed and to believe defendant guilty thereof. It was established that defendant was an occupant of the Volkswagen having been thrown out of the vehicle as a result of the accident and injured; the only other occupants were a young woman and a baby; the marijuana was found in a pouch in a pocket of a man's coat lying loosely on the back seat of the Volkswagen; in other pockets of the same coat were a passport with defendant's photograph, name and address and a wallet containing defendant's driver's license. The magistrate was warranted in the undisputed inference that the coat belonged to defendant. Thus, an inference of possession of contraband by defendant may be drawn from the presence of the narcotic in his coat—among his "personal effects." (*People* v. *Flores,* 155 Cal.App.2d 347, 349 [318 P.2d 65]; *People* v. *Mateo,* 171 Cal.App.2d 850, 855 [341 P.2d 768]; *People* v. *Villanueva,* 220 Cal.App.2d 443, 450 [33 Cal.Rptr. 811]; *People* v. *Luke,* 233 Cal.App.2d 793, 796 [43 Cal.Rptr. 878].) Inasmuch as

defendant's address was San Francisco and the accident occurred near San Luis Obispo, also reasonable is the inference that defendant was on an extended trip which would increase the likelihood of his knowledge of what was in his coat. Absent in the record is any suggestion that the other occupants of the vehicle had exclusive knowledge of the marijuana. ▮ The requirement of knowledge of the narcotic nature of the contraband was established by application of the rule that the mere possession of a narcotic constitutes sufficient evidence from which knowledge may be implied. (*People v. Bretado,* 178 Cal.App.2d 465, 469 [3 Cal.Rptr. 216] ; *People v. Sullivan,* 214 Cal.App.2d 404, 408 [29 Cal.Rptr. 515].)

The order is reversed.

Wood, P. J., and Fourt, J., concurred.