[Crim. No. 4514. Fourth Dist., Div. Two. Sept. 15, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLENE VERONICA HEMMER, Defendant and Appellant.

1054

**COUNSEL**

Cohen, Stokke & Owen and Allan H. Stokke for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Richard P. Hemar, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**GABBERT, J.**—By information appellant Charlene Hemmer was charged with one count of grand theft in violation of Penal Code, sections 484-487, and with one count of unlawfully driving or taking an automobile in violation of Vehicle Code section 10851. After a motion to set aside the information under Penal Code, section 995, was denied, and defendant entered a plea of not guilty, a jury found her guilty of violating Penal Code sections 484-487 (grand theft). Appellant's motion for a new trial was denied; proceedings were suspended and she was granted three years' probation subject to various terms and conditions, including psychiatric counseling. As a term of probation, she was also ordered to serve a total of 77 days, on weekends, in the Orange County jail.

The facts show appellant leased a 1969 Pontiac automobile from Richard T. Smith for the period of September 30, 1969, to October 5, 1969. Smith testified the information required on the lease form, including appellant's address, had been obtained from her driver's license, and appellant stated she was employed by the Lackey Amusement Company in Artesia. Smith also testified the leased auto had 9,289 miles on it, and was equipped with the original tires, in good condition.

Smith recovered the vehicle in Lemoore, California on December 17, 1969; the vehicle had 13,798 miles on it, and Smith had to replace three tires on it to safely return it to Orange County.

The lease form contained a provision the lessee would notify the lessor if the vehicle was not to be returned at the end of the lease period. On October 5, 1969, Smith received a telephone call from a woman (appellant

testified she was the caller) regarding the return of the vehicle. During this conversation, Smith told the caller "a couple of days would be all right," and "there wasn't much [he] could do about it," if the car was returned after the lease period. Smith did not maintain any offices to which the leased vehicle could be returned outside Orange and Los Angeles Counties.

When the vehicle was not returned, Smith called the telephone number which appellant had given and found it disconnected. He was also unable to locate her through the Lackey Amusement Company. When he went to the given address, a space in a mobile home park, someone else was living there.

On October 17, 1969, Smith mailed a certified letter to appellant's address; the letter was returned marked "Moved, left no address." In further attempts to locate the vehicle, Smith, on several occasions spoke to a Mrs. Welch whom he knew to be a close friend or relative of the appellant. Mrs. Welch lived directly behind the address which appellant had given, in the mobile home park.

O. P. McCammon, the manager of an apartment house in Long Beach, testified he had rented an apartment to the appellant on June 27, 1969, under the name of Mrs. Donald Pointer. On August 1, 1969, the lease was signed over to George Lackey and his wife Charlene [the defendant]. Appellant left this apartment on October 6, 1969.

Vernon McBlain, the manager of the mobile home park, testified appellant had lived at the mobile home park address until June 1969 and had not lived there after July 1, 1969. McBlain had seen appellant, however, with Mrs. Welch at her address in the mobile home park on several occasions.

On December 11, 1969, Smith received a phone call from the appellant from Fallon, Nevada. Appellant said she had heard the police were looking for her; Smith informed her he had filed a criminal complaint against her for failing to return the leased vehicle. Appellant told Smith she had given the vehicle to George Lackey on October 27, 1969, in Hanford, California.

Appellant was arrested, on December 11, 1969, in Lemoore, California, on a traffic warrant; at the time of her arrest she denied her identity as Charlene Hemmer and gave another name.

For the defense, Mrs. Welch testified appellant had lived with her periodically during September 1969. Mrs. Welch testified she had told Smith on three occasions appellant had left the vehicle at the Rod Rimmer Pontiac Garage in Hanford, California.

Appellant testified when she leased the vehicle she did not intend to embezzle it, commit fraud or theft; her reason for not returning the vehicle earlier was because the vehicle had three bad tires and was unsafe to drive. Had the tires been adequate she would have returned the vehicle. She also stated when she telephoned Smith on October 5, 1969, he did not state any particular time at which he wanted the vehicle returned. Appellant further testified she had written Mrs. Welch, asking her to have Smith pick up the vehicle. She had left the leased vehicle at the Rimmer Garage on a Sunday when the garage was closed, and told no one she had left it. She further testified Smith had copied the mobile home park address from her driver's license, even though she had told him she was staying with Mrs. Welch.

Although appellant returned to Orange County in early November, she did not call Smith, even though she had left the vehicle at the Rimmer Garage. On her return to Hanford, she retrieved the vehicle from the garage, drove to Lemoore, and put it in a garage there. She used the car two more times and let other people use it also. Appellant did not strip or repaint, obliterate identification numbers, or hide the vehicle.

Appellant raises four major contentions:

(1) Her motion for a new trial should have been granted on the basis of psychiatric evidence which indicated she did not have the mental capacity to formulate the intent to commit grand theft;

(2) The evidence was insufficient to support the finding of guilt on the count of grand theft;

(3) Her motion to set aside the information under Penal Code section 995, was erroneously denied, and she was improperly bound over solely on the basis of the presumption found in Vehicle Code section 10855, and without a showing of jurisdiction in California;

(4) Instructions as to the effect of two statutory presumptions should not have been given. Appellant also urges the presumptions are unconstitutional.

In view of our disposition of the case, we reach only the latter two arguments.

### THE MOTION TO SET ASIDE THE INFORMATION WAS PROPERLY DENIED

Appellant first contends the magistrate at the preliminary hearing held her to answer without probable cause and solely on the basis of the

presumption contained in Vehicle Code section 10855.[1] This argument is without merit.

■ The test in reviewing the denial of a Penal Code section 995, motion is whether the magistrate conducting the preliminary examination, acting as a man of ordinary caution and prudence, could conscientiously entertain a strong suspicion of the guilt of the accused. (*Taylor* v. *Superior Court,* 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131]; *Rideout* v. *Superior Court,* 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; *People* v. *Roth,* 261 Cal.App.2d 430, 443-444 [68 Cal.Rptr. 49].) ■ An information will not be set aside or a prosecution thereon be prohibited if there is some rational ground for assuming the possibility an offense has been committed and the accused is guilty of it. (*Rideout* v. *Superior Court, supra.*) Guilt beyond a reasonable doubt is not required; all that is required is a reasonable probability of guilt. (*Taylor* v. *Superior Court, supra.*)

■ Considering the length of time beyond that stipulated in the lease agreement during which the car was kept, the fact appellant returned to Orange County and failed to notify the lessor of the location of the car, and the incorrect address which she allegedly gave at the time she leased the car, we conclude the evidence supported the magistrate's finding that reasonable and probable cause existed to charge her with grand theft. The committing magistrate could reasonably have drawn an inference of embezzlement from these facts wholly apart from the presumption of Vehicle Code section 10855.

Appellant's argument the superior court had no jurisdiction to try the case because the evidence taken at the preliminary hearing failed to show an embezzlement within the state is equally without merit. The evidence supports the reasonable inference an intent to embezzle the leased vehicle was formed at the time the lease was signed, rather than at some time later outside of California.

## CONSTITUTIONAL CONSIDERATIONS

Appellant maintains the presumptions found in Penal Code section 484, subdivision (b)[2] and Vehicle Code section 10855, are unconstitutional

[1]Vehicle Code section 10855, reads: "Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle.":

[2]Penal Code section 484, subdivision (b), reads: "Except as provided in Section 10855 of the Vehicle Code, intent to commit theft by fraud is presumed if one who has leased or rented the personal property of another pursuant to a written contract fails to return the personal property to its owner within 20 days after the owner has

violations of the due process clause of the Fourteenth Amendment because they violate the constitutionally protected right to a jury trial in a criminal case, and because they are irrational and arbitrary.

Although the jury was instructed on the presumptions in both Penal Code section 484, subdivision (b), and Vehicle Code section 10855, we need not reach the question whether an instruction as to the effect of a presumption which establishes an element of a crime necessary for conviction violates the right to a jury trial protected under the Fourteenth and Sixth Amendments. ■■ Here, as we shall discuss, on the evidence produced by appellant, the jury should not have been instructed as to the effect of the presumptions. Thus on retrial the jury will be required to find all of the elements of the crime necessary for conviction, without instruction as to the presumptions, assuming the trial judge determines there is evidence sufficient to sustain a finding of the nonexistence of the presumed fact.

■■ As interpreted by the trial court in the case at bench, however, the major portion of the presumption under Penal Code section 484, subdivision (b), is irrational and arbitrary and thus violates the due process clause of the Fourteenth Amendment.

■■ Under the due process clause of the Fourteenth Amendment, a criminal presumption must be regarded as irrational or arbitrary, and hence unconstitutional, unless it can at least be said with substantial assurance the presumed fact is more likely than not to flow from the proved fact on which it is made to depend (*Turner* v. *United States*, 396 U.S. 398 [24 L.Ed.2d 610, 90 S.Ct. 642]; *Leary* v. *United States*, 395 U.S. 6 [23 L.Ed. 2d 57, 89 S.Ct. 1532].)

■■ Evidence introduced at trial showed the lessor Smith made written demand by certified letter for the return of the leased vehicle. Penal Code section 484, subdivision (b), establishes intent to commit theft by fraud is presumed if the leased property is not returned within 20 days after such demand. The certified letter was here returned, however, marked "Moved, left no address." ■■ In the absence of proof the lessee actually received the demand letter, it cannot be said with substantial assurance that intent to commit theft is more likely than not to exist when only a written demand and failure to return are shown. To presume an intent to commit theft where a demand letter is sent but not received, and where the leased property is not returned, presumes a conclusion from an unrelated premise

made written demand by certified or registered mail following the expiration of the lease or rental agreement for return of the property so leased or rented, or if one presents to the owner identification which bears a false or fictitious name or address for the purpose of obtaining the lease or rental agreement."

and thus violates the *Turner* and *Leary* test. (See also *United States* v. *Romano*, 382 U.S. 136 [15 L.Ed.2d 210, 86 S.Ct. 279]; *Tot* v. *United States*, 319 U.S. 463 [87 L.Ed. 1519, 63 S.Ct. 1241]; *People* v. *Stevenson*, 58 Cal.2d 794, 797-798 [26 Cal.Rptr. 297, 376 P.2d 297]; *People* v. *Johnson*, 258 Cal.App.2d 705, 709 [66 Cal.Rptr. 99]; *The Unconstitutionality Of Statutory Criminal Presumptions*, 22 Stan.L.Rev. 341; Ashford and Risinger, *Presumptions, Assumptions, And Due Process In Criminal Cases*, 79 Yale L.J. 165; *The Constitutionality Of Statutory Criminal Presumptions*, 34 U.Chi.L.Rev. 141.)

However, the section does not appear to violate due process if it is construed to require proof both of sending a demand letter and receipt by the lessee, as well as failure to return the leased property within the 20-day period. Thus on retrial, the portion of the presumption dealing with demand and return should not be considered unless the evidence shows that the lessor sent the demand letter in the requisite manner, the lessee received the letter, and that the leased property was not returned within the 20-day statutory period.

### INSTRUCTIONS ON PRESUMPTIONS

Appellant argues the jury should not have been given instructions concerning the effect of the presumptions found in Penal Code section 484, subdivision (b), and Vehicle Code section 10855. Both instructions were given over the objections of appellant as to their applicability; at trial she attacked the precise language of the instructions themselves.

#### Penal Code, Section 484, Subdivision (b).

 The jury was instructed under the presumption contained in Penal Code section 484, subdivision (b).[3] The presumption is a presumption affecting the burden of producing evidence. (Pen. Code, § 484, subd. (c).)[4] It is a presumption established to implement no public policy, other than to facilitate a determination of the particular action in which the presumption is applied. (Evid. Code, § 603.) Its effect ". . . is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.)

Appellant contends the jury should not have been instructed on the

---

[3] *Supra*, footnote 2.

[4] This type of presumption is normally called a Thayer presumption. (See Thayer, Preliminary Treatise On Evidence (1898) pp. 313-352.)

presumption contained in Penal Code section 484, subdivision (b), since evidence was introduced sufficient to support a finding of the absence of intent to embezzle, commit fraud, or commit theft. Appellant testified she had no intent to embezzle the vehicle, or to commit fraud or theft. Evidence was also introduced by her showing the failure to return the vehicle was due to the unsafe condition of the tires, and the lessor had been contacted three times regarding the location of the car. *If believed,* the evidence would have been sufficient to support a finding of lack of intent to commit theft by fraud.

With evidence sufficient to support a finding of the lack of intent to commit theft by fraud, the presumption disappeared from the case, and an instruction as to its effect should not have been given.[5] The legislative committee comment on Evidence Code section 604, describing the effect of a presumption affecting the burden of producing evidence, notes: "Such a presumption is merely a preliminary assumption in the absence of contrary evidence, i.e., evidence sufficient to sustain a finding of the nonexistence of the presumed fact. If contrary evidence is introduced, the trier of fact must weigh the inferences arising from the facts that gave rise to the presumption against the contrary evidence and resolve the conflict. . . ."

"If a presumption affecting the burden of producing evidence is relied on, the judge must determine whether there is evidence sufficient to sustain a finding of the nonexistence of the presumed fact. If there is such evidence, the presumption disappears and the judge need say nothing about it in his instructions. . . ."

 Thus, if there is evidence sufficient to support a finding of the nonexistence of the presumed fact, the presumption disappears and no instruction should be given. (See CALJIC (3d ed.) Appendix B.)

The trial judge declined to make the preliminary finding required by Evidence Code section 604, on the ground that "[I would be] taking it upon myself to invade the province of the jury. . . ." On the contrary, by preliminarily holding the evidence was sufficient to support a finding of the nonexistence of the presumed fact, and therefore not giving a presumption instruction, the trial court would have left the jury free to draw such normal inferences as could be drawn from the evidence, unfettered by the presumption instruction which stated the law *presumed* an intent to commit theft by fraud.

---

[5]"The unique feature of a Thayer presumption is that it has no further function; once the opponent satisfies the burden of producing evidence, the presumption vanishes and the action proceeds as if the presumption never existed." (Note, *The California Evidence Code, Presumptions,* 53 Cal.L.Rev. (1965) 1439; see Thayer, Preliminary Treatise On Evidence (1898) pp. 313-352.)

*Vehicle Code, Section 10855.*

██ The jury was also instructed under Vehicle Code section 10855.[6] Unlike Penal Code section 484, subdivision (b), however, the type of presumption which Vehicle Code section 10855, creates is not specified. We conclude Vehicle Code section 10855, creates a presumption affecting the burden of producing evidence, and thus also should not have been given in the instructions to the jury under the state of proof which here existed.

Evidence Code section 603, specifies a presumption affecting the burden of producing evidence is one established to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied. Examples of such presumptions are Evidence Code section 630-645. The presumptions therein ". . . are designed to dispense with unnecessary proof of facts that are likely to be true if not disputed . . . . They are intended solely to eliminate the need for the trier of fact to reason from the proven or established fact to the presumed fact and to forestall argument over the existence of the presumed fact when there is no evidence tending to prove the nonexistence of the presumed fact." (Evid. Code, § 603, Law Revision Commission Comment.)

On the other hand, a presumption affecting the burden of *proof* is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied. (Evid. Code, § 605.) We can discern no such public policy on which Vehicle Code section 10855, is based. That section is directed only toward facilitating a finding to which logic would normally lead and toward bringing forth evidence normally unavailable to the prosecution which is more readily available to the defendant. Without further underlying public policy (cf. Evid. Code, §§ 660-668), Vehicle Code section 10855, is a presumption affecting the burden of producing evidence.

As in the procedure we have described concerning the presumption in Penal Code section 484, subdivision (b), the trial court should have made a preliminary determination, under Vehicle Code section 10855, whether a finding of the nonexistence of embezzlement would have been supported by the evidence.

Appellant testified she did not intend to embezzle the property, and failed to return it only because the tires were bad and the car was unsafe

---

[6]*Supra,* footnote 1.

to drive. In addition, Mrs. Welch testified that, on appellant's request, she informed the lessor Smith where the vehicle was located on more than one occasion. This evidence, *if believed,* would support a finding the appellant lacked the fraudulent intent to embezzle necessary to deprive the owner of his property. (See *People* v. *Whitney,* 121 Cal.App.2d 515 [263 P.2d 449]; 1 Witkin, Cal. Crimes (1963) § 391.)

Since the evidence was sufficient to support a finding of the nonexistence of embezzlement, a jury instruction based upon the presumption established by Vehicle Code section 10855, should not have been given.

All of the constituent crimes which comprise grand theft (Pen. Code, §§ 484-487) require specific intent. Here the evidence of intent was circumstantial and was contradicted by the testimony of both appellant and Mrs. Welch. Yet the instructions concerning presumptions, in essence, removed the question of intent from the jury's consideration by stating intent was *presumed* from certain facts which were in evidence.

Appellant was thus deprived of her right to have all of the elements of the crime determined by the jury; she therefore did not receive a fair trial. This constituted prejudicial error.

The judgment is reversed.

Kaufman, J., concurred.

**GARDNER, P. J.**—I dissent.

Stripped to their essentials the facts show that the defendant rented a car from Mr. Smith for a period of five days. The car was equipped with its original tires which were in good condition. The defendant gave a false address, a false telephone number, and a false employer. Two months and six days later, the car was recovered in a garage in Lemoore, California. In the interim, it had been driven 4,509 miles and Mr. Smith had to replace some tires before returning the car to Orange County. At the time of her arrest, the defendant gave a false name.

During the time the car was missing, the only communications Mr. Smith had concerning the car were: (1) a call from a woman (Mr. Smith, however, did not know it was the defendant and assumed it was someone else; in her testimony, the defendant said she made the call) the day before the car was due back asking for an extension of time to return the car to which request Mr. Smith said that since he could not do anything about it that it would be all right to keep it for a couple of days; (2) Mrs. Welch received a letter from the defendant and thereafter called Mr. Smith and said the car was in a garage in Hanford.

*After* the complaint was filed and the warrant issued, Mr. Smith did receive a call from the defendant in which she said she had given the car to George Lackey over a month before the call. *After* her arrest, she called Mr. Smith and asked him to drop the charges.

The defendant testified that she had no intent to wrongfully take the car; that she would have returned it except that it had bad tires; that at one time she left it in a street behind a used car lot in Hanford, then picked it up again, drove it some more, let others drive it, then put it in a garage in Lemoore where it was eventually found. During the time the car was missing, she returned to Orange County but made no effort to communicate with Mr. Smith.

To me, the evidence of defendant's guilt is overwhelming. Her defense is pitiful. "It would be difficult to imagine conduct more dishonest and surreptitious than that of this appellant as disclosed by the instant record." (Mr. Justice Herndon dissenting in *People* v. *Turner,* 267 Cal.App.2d 440, 447 [73 Cal.Rptr. 263], a case in which the facts are weaker than those in the one before us.) I do not consider the case to be a close one. On the contrary, the evidence of defendant's guilt is strong and convincing. Assuming the majority to be correct in their holding that the giving of the two instructions was error, in my opinion the giving of those instructions and the manner in which they were given did not result in a miscarriage of justice.

The jury was thoroughly, fully, painstakingly and properly instructed as to all phases of the law necessary to their deliberation. Buried in all of these proper instructions were the two found to be erroneous by the majority. These two were followed by an instruction that presumptions were not evidence and were not to be considered as such. This instruction lessened the impact of the challenged instructions to the extent that they became virtually a nullity—at the worst, surplusage.

I have some reservations about the invalidity of these instructions on the grounds stated by the majority, but this is not an appropriate case to enter the "Never-Never Land" of appearing and disappearing presumptions. To expound my reservations concerning these instructions would unduly prolong this dissent and add nothing to the lore of the law in this area. However, even if the instructions were erroneous, no injustice was done.

I agree that the giving of the instruction on Penal Code section 484, subdivision (b), was error because, at least in part, it was not responsive to the evidence. The sending of a letter which was returned and stamped "Moved, left no address" can hardly be construed as a valid "written demand." Nevertheless, I do not feel that any juror would feel that the

letter sent in this case would be a "demand" sufficient to put the presumption into effect. The jury was told: "Whether some of the instructions will apply will depend upon your determination of the facts. You will disregard any instruction which applies to a state of facts which you determine does not exist." (CALJIC 17.31.)

Therefore with respect to the Penal Code section 484, subdivision (b) instruction, the language in the recent case of *People* v. *Hairgrove,* 18 Cal. App.3d 606 [96 Cal.Rptr. 142], is especially appropriate: "Because the erroneous instructions were so clearly inapplicable, we are convinced the jury disregarded them in reaching its verdict." (*People* v. *Hairgrove, supra,* p. 609.)

I do not agree with the majority that the instructions complained of removed from the jury's consideration the question of intent. The matter of intent was thoroughly covered in other instructions. Unlike *People* v. *Graham,* 71 Cal.2d 303 [78 Cal.Rptr. 217, 455 P.2d 153], where a failure to give an instruction was found to be reversible error, here the defendant was not deprived of her constitutional right to have the jury determine every constitutional issue presented by the evidence. Thus, I take the error to be of *Watson*[1] rather than *Chapman*[2] proportions. From an examination of the entire case, it is my opinion that the error, or errors, complained of have not resulted in a miscarriage of justice and I find no reasonable probability that a result more favorable to the defendant would have been reached in the absence of these alleged errors. I refuse to join in a reversal of a conviction in which the defendant's guilt is established by overwhelming evidence which reversal is bottomed on something as gossamer as instructions such as these which were buried in a mass of correct instructions. Although defendant's trial was not perfect, it was fair and the jury reached a proper verdict.

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied November 11, 1971.

---

[1]*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].

[2]*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].