[L. A. No. 3659. In Bank.—December 2, 1914.]

MAMIE R. P. COPELIN et al., Respondents, v. BERLIN DYE WORKS & LAUNDRY COMPANY (a Corporation), Appellant.

TROVER AND CONVERSION—JEWELRY LEFT IN CLOTHES SENT TO A CLEANER —LIABILITY FOR LOSS.—A cleaning and dyeing corporation is not liable for the loss of earrings left in a suit of clothes delivered to a driver of one of its wagons for the purpose of having the clothes cleaned; the jewelry being tied in a bag placed in one of the pockets, and the clothes having been constantly in the possession of the cleaning company or its employees after their delivery to the driver.

ID.—RELATION OF CLEANING COMPANY TO CUSTOMER—GRATUITOUS OR INVOLUNTARY BAILEE.—In such case the cleaning company is not chargeable as an involuntary bailee, nor as a gratuitous bailee, so as to be liable for the theft of the jewelry.

ID.—SEARCH OF CLOTHES OF CUSTOMERS—DUTY OF CLEANER TO MAKE.— A search by a cleaning company of the clothes of a customer and

the preservation of articles carelessly left in pockets, is not part of the contract between the company and the customer; and the fact that the company appoints an employee to search the clothes of customers for articles left therein does not make it liable for the loss of valuables left in pockets.

ID.—SEARCHER OF CLOTHES—THEFT OF ARTICLES—LIABILITY OF EMPLOYER.—Where an employee of a cleaning company whose duty it is to collect, mark, or search clothes delivered to the company for cleaning, steals valuables left therein without the wish or consent of his principal, he is not acting within the scope of his occupation and the cleaning company is not responsible for his acts.

ID.—RESPONDEAT SUPERIOR—WILLFUL OR MALICIOUS ACTS OF EMPLOYEE. The liability of an employer does not extend to willful or malicious acts of his employees, done while engaged in his service but independent of that service and for the servant's own benefit; and this is true even where the employment furnishes the opportunity for the wrongdoing.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. Eugene P. McDaniel, Judge presiding.

The facts are stated in the opinion of the court.

Goldberg & Meily, H. L. Dearing, and George L. Greer, for Appellant.

Charles Lantz, W. J. Wood, and Davis, Lantz & Wood, for Respondents.

MELVIN, J.—This is an appeal from the order denying defendant's motion for a new trial.

The action was one for nine hundred dollars, the value of a pair of earrings alleged to have been received by the defendant and converted by it to its own use. Defendant is engaged in the business of cleaning and dyeing clothes. Mrs. Copelin, one of the plaintiffs, sent a suit of clothes belonging to her husband, the other plaintiff, to the establishment of the defendant, for the purpose of having the garments cleaned. The suit was delivered to the driver of one of defendant's wagons. Next morning, Mrs. Copelin telephoned to the defendant's office to learn if some bank books which she believed she had forgotten to remove from one of the pockets of the suit, had been discovered. She was informed that the books had been found. Later, on the same day, she

was called on the telephone by one of defendant's employees and asked if she had missed any jewelry. After consultation with her husband she remembered that he had pinned in the watch pocket of the trousers which she had sent to the cleaners, a small bag containing some of her rings and a pair of earrings worth nine hundred dollars. Both plaintiffs testified to Mr. Copelin's custom of carrying his wife's jewelry in this way. Both also testified that the defendant had returned to them the bag and the rings, but that they had never received the earrings.

Defendant introduced as witnesses the employees through whose hands the clothes had passed. The driver testified that he had received the clothes and delivered them at the laundry without examining the garments or taking anything from the pockets. The young woman who had searched for and found the bank books swore that she had found nothing else. She passed the suit to another young woman who marked the garments for identification. The latter said she had neither searched for nor found anything in the pockets, but that she had passed the clothes to Mr. Gray, whose special duty it was to examine all clothing received by defendant so that articles likely to damage the cloth during the process of cleaning might be removed. According to his testimony, Mr. Gray found the finger rings and nothing else. They were in a small bag which was loose in the watch pocket of the trousers, not pinned in that pocket as plaintiffs testified it had been. There was a discrepancy in the testimony regarding the number of rings found. Gray said there were three and plaintiffs insisted that there were four, but this variance is entirely immaterial on appeal, because plaintiffs admitted that all of the rings which had been left in the pocket had been returned to them.

The defendant insists that the evidence was insufficient to sustain the findings of the trial court. Respondents, on the other hand, are of the opinion that the facts of the case bring it within the principles announced by section 2338 of the Civil Code. It appears from the testimony that because frequently articles were left in the pockets of clothes sent to defendant's establishment to be cleaned, dyed, or repaired, defendant employed a man whose special duty it was to search for such articles. Section 2338 of the Civil Code is as follows:

"Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal."

It is argued that according to the testimony of plaintiffs the bag containing the earrings was securely tied when it was sent to the cleaners; that, as Mr. Gray testified, it was securely tied when he took it from the pocket; that it had been constantly in the possession of the servants of defendant since leaving that of Mrs. Copelin; that even admitting the absence of liability for the loss of anything which might have dropped from the pockets and been so lost in the ordinary handling of the clothes prior to the search for the articles, the fact that the bag was tied precluded such theory; and that therefore the court was justified in assuming the abstraction to have been by one of the agents of the defendant in the transaction of his business and as a part of such transaction. The trouble with this theory is that a search of the clothing of customers and the preservation of articles carelessly left in pockets was no part of the contract between the customer and the cleaner. The defendant (whose duty was merely to clean the clothes of Mr. Copelin and to take slight care in preserving articles which might be left therein) had not assumed the functions of an insurer merely because it had, out of an abundance of caution, appointed a searcher for lost articles. The defendant was not a voluntary bailee of the jewelry of the plaintiffs which came into the custody of its servants without its consent or knowledge. Because one of those servants was charged with the duty of searching clothing, it cannot be said that defendant must pay for property left in the pocket of Mr. Copelin's garment and stolen by somebody.

There was no jury and the learned judge of the trial court did not find that any particular employee of defendant stole the earrings. In his written opinion he used the following language: "I am satisfied that some one in the employ of the defendant must have taken the earrings." To sustain the judgment, therefore, we would be compelled to hold that if any person intrusted with the handling of the suit of clothing stole the property left in a pocket, the defendant would be

liable. The allegation of the complaint was that defendant "being in the possession of the said earrings, unlawfully converted and disposed of the same to its own use," and the finding was that the allegations contained in the complaint were true. But it was not shown that the defendant ever personally or by any of its officers knew of the presence of the valuables in Mr. Copelin's clothing. Unless, therefore, the wrong of the servant was committed *within the scope of his employment,* the corporation was not bound.

Respondents cite such cases as *Chamberlain* v. *Southern California Edison Co.,* 167 Cal. 503, [140 Pac. 26], where Department Two of this court adopted with approval the following statement of the rule as contained in 10 Cyc. 1205: "Under the rule of *respondeat superior* a corporation is civilly liable for torts committed by its servant or agent while acting within the scope of his employment, although the corporation neither authorized the doing of the particular act nor ratified it after it was done." Unquestionably that is the general rule, and we pointed out the additional facts in the Chamberlain case that the servant who caused the injury was operating the motor car under authority of his principal, and that the defendant ratified his act by repairing, for a consideration, the automobile which the servant was engaged in "towing" to its shop. In that case and in similar ones, there was no doubt about the offending servant acting within the scope of his authority. It is the duty of a servant to drive an automobile on the public street safely and his negligence is imputable to his principal who is bound to employ a skilled man for such work. But when a servant whose duty it is to collect, mark, or even search clothes steals valuables left therein without the wish or consent of his principal, he is not acting within the scope of his occupation. The liability of the master does not extend to willful or malicious acts of the servant done while engaged in the master's service but independent of that service and for the servant's own benefit. And this is true even where the employment furnishes the opportunity for the wrong doing.

In *Walsh* v. *Hunt,* 120 Cal. 47, [39 L. R. A. 697, 52 Pac. 115], this court was considering the act of an agent to whom an executed note and mortgage had been left for delivery. The agent altered the figures evidencing the principal sum and the rate of interest. It was held that while the forger was

admittedly the agent of the defendant for certain purposes, he had no implied or ostensible authority conferred upon him to commit a forgery. So, here, the agency of the employees of the Berlin Dye Works & Laundry Company in no instance extended permission to steal jewelry on behalf of that corporation. In *Rahmel* v. *Lehndorff*, 142 Cal. 682, [100 Am. St. Rep. 154, 65 L. R. A. 88, 76 Pac. 660], it was held that an innkeeper was not liable for an assault and battery committed by a waiter in his dining-room upon one of his guests. In the opinion, written by the late Chief Justice Beatty, the rule is thus stated:

"By the general law of master and servant, the master is not liable for the malicious torts of the servant committed outside of the scope of his employment. The wrongful act must be one which the servant is empowered under some circumstances to do. It must be something which his employment contemplated, as, for instance, the ejection of a passenger or intruder from a railroad car. Conductors and brakemen have authority to eject disorderly passengers, or persons who refuse to pay their fare, and it is left to their discretion when such authority shall be exercised. In a proper case they may eject a passenger without incurring any liability themselves or imposing any liability upon their employer, but if they eject him wrongfully and maliciously the carrier is liable upon the general ground that the act is one which, if lawfully done, could be done in the employer's name, and justified by his authorization. The law on this point is very clearly stated in Cooley on Torts (star pages 535 et seq.), and in none of the decisions of this court has a stricter rule been enforced than as above stated. Under this rule, the defendant cannot be held liable, because there is no finding and no reason to presume that defendant ever authorized his servants to assault his guests, or any other person, under any circumstances."

In *Stephenson* v. *Southern Pac. Co.*, 93 Cal. 560, [27 Am. St. Rep. 223, 15 L. R. A. 475, 29 Pac 234], it was held that defendant's engineer who, to frighten passengers on a street-car which was in close proximity to defendant's tracks backed his engine toward said street-car, was not acting within the scope of his employment, and that defendant was not liable for the injury sustained by a passenger who leaped from the street-car to avoid the apparent peril. Familiar examples of

nonliability of a person for the torts of his servant committed outside of the scope of the latter's duty are found in the so-called "joy ride" cases wherein owners of automobiles have been held not liable for injuries inflicted by their servants while using the masters' motor cars without authority. We had occasion to cite the leading cases on this subject in *Chamberlain* v. *Southern Cal. Edison Co.*, 167 Cal. 503, [140 Pac. 25]. The same principle is applicable to the facts of this case.

The defendant was not chargeable as an involuntary bailee. At common law one could not be made a bailee without his consent. (9 Am. & Eng. Ency. of Law, 2d ed. 283.) The Civil Code (secs. 1815 and 1816) modifies this rule by providing that "An involuntary deposit is made: 1. By the accidental leaving or placing of personal property in the possession of any person, without negligence on the part of its owner," and that the involuntary depositary is bound to take charge of the property if able to do so. But the plaintiff, Mrs. Copelin, was clearly negligent and there was no evidence that defendant's servants were authorized or directed to accept on behalf of their master the care and custody of property left in the clothing which they might handle in the course of their employment. Even if we should concede the correctness of respondent's contention that defendant occupied the position of a gratuitous bailee, we should be compelled to hold that the corporation could not be held for the theft. The relation of master and servant does not appertain to the wrongful acts of the latter committed, outside the scope of his employment, upon the article so bailed. In *Merchants Nat. Bank of Savannah* v. *Guilmartin*, 88 Ga. 798, [17 L. R. A. 322, 15 S. E. 831], it was held that a bank is not liable for the theft by its cashier of valuable securities received from one of its customers as a special deposit to be kept simply for the depositor's accommodation and to be returned to him on demand. It was said by the court, Mr. Justice Lumpkin delivering the opinion, that the cashier had nothing to do with the special deposit except to suffer it to remain in a safe place, and that consequently in taking it to himself he was stepping aside from his employment to do an act for personal gain. "Such an act," (to quote directly from the opinion) "is lacking both in the rendition of and the intent to render any service to the employer." To the

CLXVIII Cal.—46

same effect are *Scott & Bro.* v. *National Bank of Chester Valley*, 72 Pa. St. 477, [13 Am. Rep. 711] ; *First Nat. Bank of Allentown* v. *Rex*, 89 Pa. St. 312, [33 Am. Rep. 767] ; *Comp* v. *Carlisle Deposit Bank*, 94 Pa. St. 409; *Foster* v. *Essex Bank*, 17 Mass. 496, [9 Am. Dec. 168] ; *Glover* v. *Burbridge*, 27 S. C. 306, [3 S. E. 471] ; and *Deihl* v. *Ottenville*, 82 Tenn. (14 Lea,) 191.

It follows that the order denying defendant's motion for a new trial must be reversed, and it is so ordered.

Henshaw, J., Lorigan, J., and Sullivan, C. J., concurred.