[Crim. No. 7942. First Dist., Div. One. Apr. 8, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
PERCY ANDREWS et al., Defendants and Appellants.

COUNSEL

Steven L. Hallgrimson, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Louis C. Castro, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, J.**—Following a jury trial, Percy Andrews, Junius Rollins and Cornell Shaw were convicted and sentenced to prison on two counts of second degree burglary. Each has appealed. The theory of the People was that the defendants, in concert, entered two roadside country stores with intent to "tap cash register tills," i.e., commit larceny, in violation of Penal Code section 459 proscribing burglary.

No contention is made that the evidence presented to the jury was insufficient to support the guilty verdicts. We therefore relate only such portions as we deem relevant to the contentions here made.

The first of defendants' victims, obviously anticipating such an offense, had placed a specially marked $5 bill in the cash register below other currency. This bill was among those taken by the men who tapped the till. The second of the two incidents followed the first by about a half hour. There, while the clerk's attention was diverted from the open cash register drawer, he heard the click of the "hammer that holds down the money." Turning around quickly he saw defendant Andrews with "both hands full of money." Thereupon the three men made a hasty departure. The clerk observed the license number of their departing car and then reported the crime and the license number to the police.

Soon after, defendants' car was stopped by a highway patrol officer to whom a report of the crime and license number had been transmitted. Moments later the victim of the second offense arrived with other policemen, including the police chief. Andrews, Rollins, and Shaw were identified by him as the men who had been in his store. They were thereupon arrested with a fourth person, the driver, charges against whom were later dismissed.

Following the arrests the police chief removed a jacket containing some exposed currency from the car. Observing its removal defendant Shaw exclaimed: "That's my jacket and my money." With the money, although unnoticed at the time, was the marked $5 bill.

The defendants and the driver were taken to the county jail. The auto-

mobile was impounded and taken to a "storage area" where the officers proceeded to inventory the car's contents. While taking the inventory the trunk of the car was opened. In it were found "hundreds" of unused small items, such as paint brushes, cards of buttons, greeting cards, napkins, light bulbs, razor blades, scotch tape and beer cans. The police had no search warrant.

Evidence produced at the trial indicated that "till tappers," including those who victimized the stores in this case, use a certain technique. A purchase of small value is made which results in the cash register drawer being opened. Then by some means, usually a pretended change of mind on the purchase, or a new purchase, the clerk's attention is distracted from the cash counter at which time an accomplice reaches into the till and extracts the larger bills. In the course of this practice "till tappers" will accumulate large quantities of diverse merchandise of little value.

On their appeal defendants make no contention that their arrests or the initial search of their automobile was in any way unlawful. Their argument is that "the admission into evidence of the items from the *trunk*" was violative of Fourth Amendment standards. They contend this evidence was prejudicial, which undoubtedly it was. But the *first* question before us is whether its admission was error.

The People respond that the incriminating evidence was properly seized after it had been observed during the course of a legally permitted *inventory* of the car's contents. Alternatively, they insist that considered as a *search* it was also proper, since it was incidental to defendants' lawful arrest, and there was reasonable cause to believe that the vehicle contained evidence of their recently committed crimes. We proceed to a consideration of the first of these contentions.

Our study of the pertinent statutory and case authority indicates to us that the basis or justification of the common police automobile *inventory* arises out of a concept widely different from that which upon "probable cause" permits a vehicle's search.[1]

It is to the "inventory" concept that we now direct our discussion.

There is little doubt that law enforcement authorities under certain conditions have the right, and often the duty, to impound a motor vehicle.

---

[1]Such searches on "probable cause" appear to relate to searches incidental to a valid arrest of the car's occupants (see *People* v. *Webb,* 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]), or those made when there is such cause to believe that contraband (see *People* v. *Ford,* 271 Cal.App.2d 725, 728 [76 Cal.Rptr. 823]), or stolen property (*People* v. *McBride,* 268 Cal.App.2d 824, 830 [74 Cal.Rptr. 375]), or evidence of a particular crime (see *People* v. *Paxton,* 255 Cal.App.2d 62, 70 [62 Cal.Rptr. 770]), is within the car.

Vehicle Code sections 22650, 22651 and 22850[2] allow peace officers to remove unattended automobiles from public highways to places of storage under many circumstances; one of these circumstances (Veh. Code, § 22651, subd. (h)) is "When an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is by this code

[2]The full text of these Vehicle Code sections follow: Section 22650: "It is unlawful for any peace officer or any unauthorized person to remove any unattended vehicle from a highway to a garage or to any other place, except as provided in this code."

Section 22651: "Any member of the California Highway Patrol or any regularly employed and salaried deputy of the sheriff's office of a county in which a vehicle is located or any regularly employed and salaried officer of a police department in a city in which a vehicle is located, . . . may remove a vehicle from a highway under the following circumstances:

"(a) When any vehicle is left unattended upon any bridge, viaduct or causeway or in any tube or tunnel where the vehicle constitutes an obstruction to traffic.

"(b) When any vehicle is left standing upon a highway in such a position as to obstruct the normal movement of traffic.

"(c) When any vehicle is found upon a highway and report has previously been made that the vehicle has been stolen or complaint has been filed and a warrant thereon issued charging that the vehicle has been embezzled.

"(d) When any vehicle is illegally parked so as to block the entrance to a private driveway and it is impractical to move such vehicle from in front of the driveway to another point on the highway.

"(e) When any vehicle is illegally parked so as to prevent access by firefighting equipment to a fire hydrant and it is impracticable to move such vehicle from in front of the fire hydrant to another point on the highway.

"(f) When any vehicle, except any highway maintenance or construction equipment, is left unattended for more than four hours upon the right-of-way of any freeway which has full control of access and no crossings at grade.

"(g) When the person or persons in charge of a vehicle upon a highway are by reason of physical injuries or illness incapacitated to such an extent as to be unable to provide for its custody or removal.

"(h) When an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is by this code or other law required or permitted to take and does take the person arrested before a magistrate without unnecessary delay.

"(i) When any vehicle registered in a foreign jurisdiction is found upon a highway and it is known to have been issued five or more notices of parking violation over a period of five or more days, to which the owner or person in control of the vehicle has failed to respond, the vehicle may be impounded until such person furnishes to the impounding police agency evidence of his identity and an address within this state at which he can be located. A notice of a parking violation issued to such vehicle shall be accompanied by a warning that repeated violations may result in the vehicle being impounded.

"(j) When any vehicle is found illegally parked and there are no license plates or other evidence of registration displayed the vehicle may be impounded until the owner or person in control of the vehicle furnishes the impounding police agency evidence of his identity and an address within this state at which he can be located."

Section 22850: "Whenever an officer or employee removes a vehicle from a highway, or from public or private property, unless otherwise provided, he shall take the vehicle to the nearest garage or other place of safety or to a garage designated or maintained by the governmental agency of which the officer or employee is a member, where the vehicle shall be placed in storage."

or other law required or permitted to take and does take the person arrested before a magistrate without unnecessary delay."

The United States Supreme Court in *Harris* v. *United States,* 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992], accepted as valid a police regulation authorizing an officer to impound a motor vehicle following the driver's arrest for robbery. The same court in *Cooper* v. *California,* 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788], where Cooper was arrested on a narcotics charge, found a police right to seize and impound his car. The court said (p. 61 [17 L.Ed.2d p. 733]), "Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded."

California's appellate courts have also recognized the right of police under proper circumstances, to impound a car. In *People* v. *Williams,* 67 Cal.2d 226 [60 Cal.Rptr. 472, 430 P.2d 30], where, upon defendant's arrest for burglary, police took his car to a storage garage, the court expressed no disapproval. And in *People* v. *Roth,* 261 Cal.App.2d 430, 435-436 [68 Cal.Rptr. 49], *People* v. *Garcia,* 214 Cal.App.2d 681, 684 [29 Cal.Rptr. 609], and *People* v. *Nebbitt,* 183 Cal.App.2d 452, 460 [7 Cal.Rptr. 8], a police impoundment of the defendant's vehicle, after his arrest was found to be proper in each case. In *People* v. *Marchese,* 275 Cal.App.2d 1007 [80 Cal.Rptr. 525], an unattended damaged car was found to have been properly removed for impoundment.

It is said that upon police impoundment of an automobile, the police undoubtedly become "an involuntary bailee of the property and responsible for the vehicle and its contents" (*People* v. *Roth, supra,* 261 Cal.App.2d 430, 436; and see 7 Cal.Jur.2d, Bailments, § 31, pp. 408-411, generally relating to the responsibility of such a bailee). Having such a responsibility it has now been widely recognized that police may properly inventory the contents of cars rightfully in their custody. Such an inventory protects the owner of the vehicle from theft or other loss of its contents; it also protects the police or garage custodian from unfounded claims of loss of property. (See *Cooper* v. *California, supra,* 386 U.S. 58, 61-62.[17 L.Ed.2d 730, 733-734]; *People* v. *Harris,* 256 Cal.App.2d 455, 461 [63 Cal.Rptr. 849]; *People* v. *Garcia, supra,* 214 Cal.App.2d 681, 684; *People* v. *Ortiz,* 147 Cal.App.2d 248, 250 [305 P.2d 145].)

We review some of the principal authorities expressing approval of bona fide inventories of automobiles, conducted without the benefit of search warrants.

*Dyke* v. *Taylor Instrument Mfg. Co.,* 391 U.S. 216, 221 [20 L.Ed.2d 538, 543, 88 S.Ct. 1472], indicated constitutional disapproval of a vehicle search by police saying: "In the instant case there is no indication that the police had purported to impound or to hold the car, that they were authorized by any state law to do so, or that their search of the car was intended to implement the purposes of such custody." *Harris* v. *United States, supra,* 390 U.S. 234 [19 L.Ed.2d 1067], concerned the discovery of evidence, on the floor under a car door, in the taking of an inventory. The court approved a Court of Appeals conclusion "to the effect that the discovery of the [evidence] was not the result of a search of the car, but of a measure to protect the car while it was in police custody." (P. 236 [19 L.Ed.2d 1069].) In *Cooper* v. *California, supra,* 386 U.S. 58 [17 L.Ed.2d 730], where police had impounded an automobile, the court said (pp. 61-62 [17 L.Ed.2d 733]): "It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it."

In *People* v. *Williams, supra,* 67 Cal.2d 226, police took custody of a vehicle following the driver's arrest for burglary. An inventory of the car's contents revealed stolen property in its unlocked trunk. The court found no vice in the police conduct, saying (p. 229), "We further conclude that the subsequent inventory and seizure at the police impound 'should be deemed a continuation of the search lawfully begun at the time and place of arrest.' "

*People* v. *Superior Court,* 2 Cal.App.3d 304, 309 [82 Cal.Rptr. 766], in an irrelevant context, states, "Evidence found in an 'inventory' preparatory to a 'proper impound' is not the result of a 'search.' " The court in *People* v. *Marchese, supra,* 275 Cal.App.2d 1007, found a police impound and inventory, following a "drunk driving" arrest which disclosed narcotics in the car's locked trunk, to be proper and part of a " 'customary and well justified procedure' " with "no question of its constitutionality." (P. 1139.) The court, however, pointed out that such an inventory must be in "good faith" and, citing earlier authority, noted that it " 'cannot be used as a subterfuge to cover up otherwise illegal activity, i.e., where the officers are actually engaged in the process of ferreting out evidence to be used in a criminal prosecution they cannot justify such activity under the guise that they were making an "inventory" for the purpose of impounding.' " (P. 1138.) In that case it was held proper to list in detail the contents of a duffel bag for "Little protection to the officer, the owner and the garage-man would be afforded if all the officer could list would be 'one duffel

bag.' " (P. 1140.) In *People* v. *Superior Court,* 275 Cal.App.2d 631 [80 Cal.Rptr. 209], a "drunk driving" arrest preceded a car's impound and inventory during which narcotics were found in the trunk. Held, the evidence was properly seized. *People* v. *Sesser,* 269 Cal.App.2d 707 [75 Cal.Rptr. 297], concerned an automobile driver's robbery arrest after which incriminating evidence was found in the glove compartment. The court approved, saying, "The search in fact in this instance appears to have been an inventory episode incident to the impounding of the car." (P. 711.)

Following an accident in the case of *People* v. *Norris,* 262 Cal.App.2d Supp. 897 [68 Cal.Rptr. 582], police impounded and inventoried a motor vehicle, finding a concealed gun in its glove compartment. Use of the gun in evidence was approved, the court saying (p. 899): "Officers in making an inventory are no more searching than when they look through an open door, or into a car, or around a room they have entered to make a lawful arrest under a warrant. In none of these cases are they required to close their eyes to that which comes into plain sight while they are engaged in such nonsearch activity." The court, however, emphasized that such an inventory must be in "good faith" and not resorted to as a subterfuge in order to accomplish an illegal search. *People* v. *Harris, supra,* 256 Cal.App.2d 455, 461, recognized that "Having such [valid] custody of the [defendant's] automobile, the officers might properly make an inventory of its contents for the protection of the defendant, the garageman and the police." *People* v. *Gil,* 248 Cal.App.2d 189 [56 Cal.Rptr. 88], concerned a "drunken driving" arrest. Over the "violent" protest of the accused who insisted that his automobile be left at the scene of the arrest "so that a friend of his could pick it up," the police inventoried and impounded the car. They "looked under the front seat," finding narcotics. The appellate court said: "The search, which is here attacked as being constitutionally unreasonable, was made incident to a lawful arrest (Veh. Code, § 23102, subd. (a)), and to a customary and well-justified procedure—the inventorying of the contents of respondent's car [citation], preliminary to its lawful impounding (Veh. Code, § 22651, subd. (h)). Therefore, there can be no question about the constitutionality of the search in terms of its having been properly occasioned. [Citation.]"

In *People* v. *Myles,* 189 Cal.App.2d 42 [10 Cal.Rptr. 733], although apparently the car was not stolen, police had probable cause to believe that it was and arrested the driver. The driver complained of the forcible opening of the vehicle's trunk and the discovery therein of stolen property. The court found the search to have been a proper incident to the arrest. As alternative justification the court stated (p. 48), "After defendant was taken

into custody on suspicion of auto theft, which required that he be taken before a magistrate without unnecessary delay (Pen. Code, § 849), the officers had a lawful right to impound his car and make an inventory of the personal items in the car. Where the officers had custody of an automobile, contraband articles found therein are already legally in their possession and no new seizure occurs." In *People* v. *Simpson,* 170 Cal.App.2d 524, [339 P.2d 156], defendant was arrested for vagrancy, contributing to the delinquency of a minor, and violation of the Mann Act. While inventorying the cars' contents prior to impounding it a police officer observed narcotics. No Fourth Amendment violation was found, the court saying (p. 530): "A police officer is authorized to remove a vehicle from the highway to the nearest garage, when he arrests any person driving or in control of a vehicle for an alleged offense, or where such officer is by the Vehicle Code or other law required to take the person arrested immediately before a magistrate. (Veh. Code, § 585, subd. (b)(5).) It thus appears the officers had a lawful right to impound the car and that, at the time, they had taken possession of it for that purpose." And following a "drunk driving" arrest in *People* v. *Ortiz,* 147 Cal.App.2d 248 [305 P.2d 145], law enforcement officers, taking an inventory, found narcotics and other evidence in a car's glove compartment. The appellate court stated (p. 250): "In the circumstances of this case it was not unreasonable for the police officer to make an inventory of the contents of the automobile prior to impounding it. Such inventory was a protection to the owner of the vehicle, the garage owner, and the officer. Since the marijuana was found during the course of making the inventory, it was not discovered as a result of an unreasonable search and therefore it was not inadmissible in evidence."

It is urged that doubt is cast upon the right of police to inventory the contents of impounded automobiles by *Preston* v. *United States,* 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881], *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], *Virgil* v. *Superior Court,* 268 Cal.App.2d 127 [73 Cal.Rptr. 793], and *People* v. *Upton,* 257 Cal.App.2d 677 [65 Cal.Rptr. 103]. We do not agree.

Neither *Preston* nor *Burke* involved any contention that the police were taking an *inventory* of the property of the subject automobiles. In *Virgil,* the evidence fell short of proof of any bona fide inventory; if one were taken, it was committed to memory for no record of it was made. And the court found no reason for the car's impoundment; Virgil had been arrested for a traffic offense and his passengers could probably have taken care of the automobile. (See Veh. Code, § 22650 (fn. 2, *ante*), relating to *unattended* vehicles.) In *Upton,* where for other reasons we found a "search" of an automobile to be proper, we rejected a contention that the police action could also be justified on the "inventory" theory. A serious question existed

whether an inventory was proper since, as in *Virgil,* Upton also had passengers who probably could have taken care of his vehicle upon his arrest. We indicated that an inventory of a car may not be taken "merely because it was impounded"; instead it must be *properly* impounded. We expressed doubt that an "otherwise *unreasonable* search" of a car is constitutionally valid simply because the police claim authority to impound it. Certainly an inventory must be one in fact and not in pretense. Without a true inventory reasonably based on a legal impoundment, and where other justification (see fn. 1 *ante*) is nonexistent, any physical inquiry into an impounded car's contents is a bald constitutionally proscribed search.

From the authority on the subject, discussed *ante,* certain principles appear.

■ The police impoundment of a motor vehicle must be reasonably required; the right does not automatically or necessarily result from the driver's arrest. It arises from some legal or factual necessity for its removal by the police, e.g., the arrest must result in the car being "unattended" (see Veh. Code, § 22650; *Virgil* v. *Superior Court, supra,* 268 Cal.App.2d 127); a car's removal would not seem proper following the driver's arrest on his own premises.[3] ■ Above all, the impoundment must be in good faith for a recognized and proper purpose; it may not be used as a device to circumvent Fourth Amendment rights. ■ If there exists no right to impound a vehicle, obviously there can be no right to inventory its contents, since the inventory is then no more than an illegal search.

■ With the right of police to impound an automobile a concomitant right to inventory its contents arises. The inventory must be reasonably related to its purpose which is the protection of the car owner from loss, and the police or other custodian from liability or unjust claim. It extends to the open areas of the vehicle, including such areas under seats, and other places where property is ordinarily kept, e.g., glove compartments and trunks. It does not permit a *search* of hidden places, certainly not the removal of car parts in an effort to locate contraband or other property. The owner having no legitimate claim for protection of property so hidden, the police could have no legitimate interest in seeking it out. Valuable property observed during the course of a proper inventory may be removed for safekeeping. And if during the course of the inventory contraband or other evidence of crime is observed, it may be seized for legally permitted confiscation, or for use as evidence in a later criminal prosecution.

■ The evidence of the case before us discloses a legally proper arrest

---

[3]We are, of course, not here discussing the police right under proper circumstances to seize an automobile pursuant to a special statute, or as evidence, or otherwise on "probable cause."

of all occupants of the subject automobile, and an ensuing police right to remove and impound the vehicle. It was reasonably necessary to inventory the car's contents, including its trunk. In the course of the inventory relevant evidence relating to defendants' crimes was discovered. Its admission in evidence was without error.

It is urged that the recent United States Supreme Court case, *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], decided June 23, 1969, restricting the police right of a warrantless search as an incident to an arrest, somehow renders the police inventory here illegal. It is doubtful if *Chimel* would affect an automobile's inventory following its lawful impoundment, *or* its search incidental to a valid arrest. *Chimel* expressly states (p. 764, fn. 9 [23 L.Ed.2d 694]): "Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' [Citations.]" But in any event *Chimel* is inapplicable here; it operates prospectively only. (*People* v. *Edwards,* 71 Cal.2d 1096, 1107-1110 [80 Cal.Rptr. 633, 458 P.2d 713].) The case before us was tried before the announcement of *Chimel.*

Since we have concluded that the disputed evidence was found in the course of a valid inventory, it becomes unnecessary to discuss the People's alternative argument that the property was taken in the course of a constitutionally permitted "search" of the vehicle.

Defendants' remaining contention of error relates to the trial judge's denial of a mistrial following a police witness' "voluntary statement."

■ At the trial the police officer was asked, "Did you notice any marks on any of the bills held by Mr. Shaw?" He answered, "Mr. Shaw, no. They took his money away from him. He just had $1.51. The Chief of Police took a marked $5 bill from him." Defense counsel cited the answer "as prejudicial misconduct on the part of the witness for the People." The court responded: "I think not. It's stricken from the record and the jury admonished to disregard it." Some time later that day the motion for a mistrial was made and denied. We conclude that the court's ruling was proper.

As we have indicated *ante,* the police chief had already testified that as he picked up a jacket with money, including the marked $5 bill, protruding from its pocket, Shaw exclaimed, "That's my jacket and my money." The later police witness was obviously referring to the same incident. His answer, clearly spontaneous, does not appear to us to be improper, error,

misconduct, *or* prejudicial. Assuming *arguendo,* some prejudice, it was cured by the trial court's prompt admonition to the jury.

The judgments as to each defendant are affirmed. The appeal of Rollins from the order denying motion for new trial is dismissed.

Sims, J., concurred.

**MOLINARI, P. J.**—I concur that the judgments as to each defendant must be affirmed and agree with the views expressed by the majority, excepting the rationale that because the police have a right to impound a vehicle they also have the right to inventory its contents without the benefit of a search warrant.

The search of the vehicle's trunk in the instant case was a reasonable search not because the police had a right to impound the vehicle, but because the search was closely related to the reason defendants were arrested and the reason the car had been impounded. (*Cooper* v. *California,* 386 U.S. 58, 61 [17 L.Ed.2d 730, 733, 87 S.Ct. 788].) As observed in *Cooper* the custody of the vehicle must be related to the charge for which the person in charge or in control of the vehicle was arrested. (P. 61; see Veh. Code, § 22651, subd. (h).) Here, the search in question was similar to that held to be reasonable in *People* v. *Webb,* 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]. There, as here, the officers lawfully began to search the vehicle at the scene of the arrest and thereafter continued the search of the vehicle after it had been towed to a police parking lot. In *Webb* the subsequent search was deemed to be a continuation of the search lawfully begun at the time and place of the arrest and the entire search process was held to be incident to that arrest. (Pp. 124-126.)

In *Cooper* it was particularly observed that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. (386 U.S. at p. 59 [17 L.Ed.2d at p. 732].) The instant search is a reasonable one under the facts and circumstances of this case. Its reasonableness does not depend on the rationale that lawful arrest and the right to take a vehicle into custody equals the right to take an inventory and, therefore, equals the right to search. (*See Virgil* v. *Superior Court,* 268 Cal.App.2d 127, 131-132 [73 Cal.Rptr. 793]; *People* v. *Upton,* 257 Cal.App.2d 677, 682 [65 Cal.Rptr. 103].) Under the broad principle announced by the majority the contents of any automobile legally impounded may be inventoried. Thus under this rationale an inventory of the contents of an automobile may be made where the automobile was left standing upon a highway in such a position as to obstruct the normal movement of traffic, such as a car parked in a "towaway zone" (see Veh. Code, § 22651, subd. (b)), or where the vehicle could not be removed be-

cause the person in charge of it was unable to provide for its custody or removal by reason of physical injuries or illness. (See Veh. Code, § 22651, subd. (g).)

I am not persuaded that merely because the police have a right to impound a vehicle they have a right to inventory its contents for their own protection. As the California Supreme Court observed in *People* v. *Burke,* 61 Cal.2d 575, 580 [39 Cal.Rptr. 531, 394 P.2d 67], neither Vehicle Code section 22651 authorizing the removal by the police authorities of vehicles from the highway under certain circumstances, nor Vehicle Code section 22850 which allows them to store such a vehicle in a garage, or place of safety, purport to authorize the making of a search. I am not unmindful that in *People* v. *Roth,* 261 Cal.App.2d 430, 435-436 [68 Cal.Rptr. 49],[1] it is stated that when the police legally impound a vehicle they become involuntary bailees responsible for the vehicle and its contents and therefore entitled to inventory the contents in order to provide safe storage for them until the owner is able to take charge.

In *Copelin* v. *Berlin Dye Works etc. Co.,* 168 Cal. 715, 718 [144 P. 961, it was held that a clothes cleaning company was not an involuntary or a gratuitous bailee of jewelry left in the pockets of clothes delivered to it for cleaning and that a search of the clothes was not a part of the contract between the company and the customer. The rationale of *Copelin* appears to be applicable here. The primary and sole purpose of the statutes authorizing the removal of a vehicle from the public highways is the removal of the vehicle itself so that it will not obstruct the highway or become a nuisance thereon. The contents of the vehicle are incidental to the removal of the vehicle. In any event, the police authorities are, at best, gratuitous bailees of the vehicle and its contents with a duty of exercising only slight care for their preservation. (Civ. Code, §§ 1845, 1846.) A gratuitous bailee is responsible only for loss which results from gross negligence, during his possession, and not at all if the loss occurred without his fault. (*Roselip* v. *Raisch,* 73 Cal.App.2d 125, 133 [166 P.2d 340]; *Davis* v. *National Lumber Co.,* 22 Cal.App. 111, 113 [133 P. 509].)

I am also not unmindful of the holding in *People* v. *Gonzales,* 182 Cal. App.2d 276, 279 [5 Cal.Rptr. 920], and *People* v. *Posada,* 198 Cal.App. 2d 535, 539 [17 Cal.Rptr. 858],[2] that a hospital becomes an involuntary bailee of the property carried on the person of an unconscious patient brought to it under conditions of emergency entitling the hospital to take such property from the patient's clothing, to make an inventory of such property, and to put it in a safe place for preservation. The rationale of

---

[1] No petition for a hearing by the Supreme Court was filed.

[2] No petition for a hearing by the Supreme Court was filed in either of these cases.

these cases is that such conduct constitutes a normal and reasonable act for the protection of the hospital and the patient in the light of the circumstances.

It must be observed here that *Cooper* makes clear that the question in each instance is whether the search was reasonable under all the circumstances. That question is whether the search was reasonable under the Fourth Amendment, and not whether the search was authorized by state law. (*Cooper v. California, supra,* 386 U.S. 58, 61 [17 L.Ed.2d 730, 733].) Under the rationale of *Cooper,* a search of an impounded vehicle without a warrant is reasonable when the custody of the vehicle is related to the charge for which the driver or person in control of the vehicle was arrested. Accordingly, where the vehicle has been impounded following an arrest of the person driving or in control of the vehicle for an offense not related to the custody of the car, or where the vehicle has been impounded because the authorities had a right to remove it from the highway but no arrest of the driver or the person in control of the vehicle has been made, a search of the vehicle without a warrant is unreasonable.

The conclusion I have reached is buttressed, I believe by the recent decision in *Chimel v. California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. There, the United States Supreme Court held that a warrantless search, even incident to a lawful arrest, must be confined to an area within the immediate control of the accused. (At pp. 763-764 [23 L.Ed.2d at pp. 694-695].) The court observed, at page 761, that Fourth Amendment rights are not mere formalities. Rather, they serve the salutary function of interposing an objective mind between police and criminal. The court concluded by observing that a warrantless search is justified only where exigencies of the situation make such course imperative. (At p. 761 [23 L.Ed.2d at p. 692].)

The majority attempts to show the *Chimel* dictates inapposite by observing that in a footnote (fn. 9, at p. 764 [23 L.Ed.2d at p. 694]) the Supreme Court held their decision to be inapplicable to automobiles. However, it is appropriate to note that such exception purported to apply where "assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction . . . .'" Thus, the circumstances under which the majority's opinion, as I read it, allows for warrantless search, are not those within the exception noted in the *Chimel* footnote. Taken to its logical conclusion, the majority opinion would allow the warrantless search which they have labeled "inventory" even where there was no probable cause or any possibility of removal of the vehicle from the jurisdiction. As I read *Chimel,* such a search is proscribed.

The majority seems to depart from our earlier decision of *People* v.

*Upton, supra,* 257 Cal.App.2d 677, 682, where we held that a search without a warrant was unjustified merely because the car was impounded pursuant to Vehicle Code sections 22650 and 22651. Although we found the search in *Upton* to be valid because based on probable cause, still the proscription mentioned directly above should, I feel, be followed. As announced in *People v. Burke, supra,* 61 Cal.2d 575, 580, Vehicle Code sections 22651, 22650, and 22850, although authorizing impounding of a vehicle, do not warrant a search without a search warrant. This was and still is the applicable California rule.[3]

Concluding, it seems to me that the majority would have the court sacrifice a constitutional right to a mere semantic distinction. Where an officer is "inventorying" rather than "searching," they suggest regular Fourth Amendment prohibitions are not applicable. This distinction appears to me to be tenuous. Label it what you will, in any event the officer is "searching," i.e., looking and taking note without a warrant. It seems to me that in balancing the Fourth Amendment rights against the right of the police to protect themselves against claimed conversion, the protection of constitutional rights must take precedence. This seems particularly true when one considers that the police could accomplish both simply by locking the vehicle.

Appellants' petition for a hearing by the Supreme Court was denied June 5, 1970. Peters, J., was of the opinion that the petition should be granted.

---

[3]The suggestion that *Burke* has been tacitly overruled by *Cooper* v. *United States, supra,* 386 U.S. 58, 60-61 [17 L.Ed.2d 730, 732-733], is disposable by observing that the impound in *Cooper* was made under auspices of Health and Safety Code section 11611 (allowing seizure and forfeiture of vehicle used in narcotics violation) rather than Vehicle Code sections 22650 and 22651. In *Cooper,* unlike the situation here envisioned, the automobile itself was evidence. (P. 61 [17 L.Ed.2d at p. 733].)