Filed 1/11/18; Opinion following rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAUL ZABALA,<br><br>    Defendant and Appellant. | H043328<br>(Santa Clara County<br>Super. Ct. No. F1348047) |

Defendant Saul Zabala was convicted of transporting a controlled substance, possessing a controlled substance for sale, and driving with a suspended license. He challenges the trial court's order denying his motion to suppress methamphetamine found in his car behind the dashboard console. As we will explain, the removal of the console here exceeded the scope of a permissible inventory search. But the search was supported by probable cause and was therefore lawful under the automobile exception to the warrant requirement.

Consistent with defendant's rehearing request, we will vacate the trial court's imposition of a three-year sentencing enhancement under former Health and Safety Code section 11370.2, subdivision (c), in light of the newly enacted version of that statute effective January 1, 2018, and affirm the judgment as modified.

## I. BACKGROUND

Defendant was driving with a suspended license when he was stopped by a Santa Clara County Sheriff's deputy for a traffic infraction. The vehicle was searched following the deputy's decision to impound it, and methamphetamine was found in a

hidden compartment behind the dashboard console. Defendant was charged with possession for sale of methamphetamine (Health & Saf. Code, § 11378; count 1), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 2), and driving with a suspended license (Veh. Code, § 14601.1, subd. (a); count 3). The information alleged four prior narcotics convictions within the meaning of Health and Safety Code section 11370.2, subdivision (c).

Defendant moved to suppress the methamphetamine as the fruit of an unlawful inventory search. At the hearing on defendant's motion, Deputy Grant Dorsey, who found the methamphetamine, testified that the deputy who had initiated the traffic stop found four blue baggies filled with a white substance in a paper bag under the driver's seat. She showed those baggies to Deputy Dorsey, who was searching the passenger side area, and he thought the substance could have been cocaine. He elaborated: "There was a white powdery substance in all of the bags. And all of the bags were in the same equal size and were in packaging material, indicative of illegal narcotics. And the white powdery substance, upon examination, looked like it could possibly be cocaine." Deputy Dorsey had a field kit to test for narcotics in his patrol car, but he did not test the substance at that time. Deputy Dorsey testified at the preliminary hearing that "[b]ased on the way the substance looked, the way it was packaged and where it was placed in the vehicle, … it was highly likely [the baggies contained] illegal controlled substances." After field testing produced negative results, he concluded it was a cutting agent to be mixed with a controlled substance to increase its volume.

After examining the baggies found under the seat, Deputy Dorsey noticed that the radio console "looked loose, like it had been manipulated previously." He explained: "The clearance between the actual dashboard and the plastic trim console looked enlarged, like it had been removed and replaced and I thought it could have been indicative of a hidden compartment in the vehicle." Using his pocket knife, Deputy Dorsey removed the console, which was in fact loose, and between the air conditioning

2

ducts behind the stereo he found several bags of a white crystalline substance that he recognized as methamphetamine.

Deputy Dorsey was trained in recognizing how illegal drugs are packaged and transported, and he was accepted by the trial court as an expert in recognizing controlled substances. Based on his training and experience, he knew that persons who use and sell illegal drugs will hide their contraband, and that persons who possess illegal drugs or cutting agents will often have additional bags hidden in their vehicle.

Deputy Dorsey explained that the Sheriff's Department protocol for inventory searches allowed officers to search places in a vehicle where people commonly put items of value, including under the seat, the glove compartment, the center console, and the trunk. The Sheriff's Department inventory policy also allowed officers to open closed containers within a vehicle.

The trial court denied the motion to suppress, finding that Deputy Dorsey's search behind the dashboard console was within the scope of a normal inventory search. In the trial court's view, "Deputy Dorsey was performing the normal community caretaker function of searching the vehicle for valuables and in the course of doing that, he found a hidden compartment. He looked into it. It is no different in my view than if he found a glove box or closed container in the vehicle. The point is to safeguard [*sic*] valuables and if a vehicle owner has a compartment in their vehicle whether it's unusual or not, that's where they put valuable things, whether it's a watch or wallet or arguably their dope, which is also a valuable thing."

The court found that the decision to impound the vehicle and perform an inventory search had been made before the suspicious powder was discovered under the seat. It did not consider whether the search was independently supported by probable cause, which the parties disputed, because the suspicious powder under the driver's seat did not affect the deputies' ability to continue the inventory search.

3

Defendant pleaded no contest to the three charged offenses, and he admitted the prior felony allegations. He was sentenced pursuant to a negotiated disposition to three years on count 2 and a consecutive three-year term for one of the prior conviction allegations. The court stayed a two-year sentence on count 1 under Penal Code section 654, imposed a 10-day concurrent jail term on count 3, and struck the additional punishment for the remaining allegations. We will modify the judgment to reflect the change to Health and Safety Code section 11370.2, subdivision (c) effective January 1, 2018 (Stats. 2017, ch 677, § 1), which eliminated the three-year penalty for the prior narcotics offenses sustained by defendant.

## II.  DISCUSSION

"In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119.) We exercise our independent judgment in determining whether, on the facts presented, a search or seizure was reasonable under the Fourth Amendment. (*Ibid*.) We may affirm the trial court's ruling if it is correct under any theory of the law applicable to the case, even if the ruling was based on an incorrect reason. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.) We examine a challenged search under an objective standard of reasonableness without regard to the officer's state of mind. (*Scott v. United States* (1978) 436 U.S. 128, 138.)

A.    **REMOVAL OF THE DASHBOARD CONSOLE EXCEEDED THE SCOPE OF AN INVENTORY SEARCH**

The United States Supreme Court has recognized that automobiles are frequently impounded as part of a local police agency's community caretaking function, and police agencies will routinely secure and inventory a vehicle's contents in that process. (*South Dakota v. Opperman* (1976) 428 U.S. 364, 368–369.) The Supreme Court has deemed such warrantless inventory searches reasonable under the Fourth Amendment where the

4

process is aimed at securing or protecting a car and its contents. (*Id*. at p. 373.) "Inventory searches are not subject to the warrant requirement because they are conducted by the government as part of a 'community caretaking' function, 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " (*Colorado v. Bertine* (1987) 479 U.S. 367, 381 (*Bertine*).) An inventory "using a standard inventory form pursuant to standard police procedures," which included the contents of an unlocked glove compartment, was deemed reasonable in *Opperman*. (*Opperman*, at pp. 366, 376.) The *Opperman* court explained that standard automobile inventories will include a search of the glove compartment because it is "a customary place" for ownership and registration documents and for "the temporary storage of valuables." (*Id.* at p. 372.)

In *Bertine*, the United States Supreme Court upheld as reasonable a vehicle inventory search that extended into canisters located in a closed backpack behind the driver's seat. (*Bertine*, *supra*, 479 U.S. at p. 369.) The officer was following standardized procedures searching a van that was being impounded after arresting the driver for driving under the influence of alcohol. (*Id*. at pp. 368, 372.) The inventory was not performed in bad faith or for the sole purpose of investigation, and the standardized procedures mandated the opening of closed containers and the listing of their contents. (*Id*. at p. 374, fn. 6.) *Bertine* rejected the state court's view that police should weigh the individual's privacy interest in a container against the possibility it may contain valuable or dangerous items, in part to allow for the prompt and efficient completion of a legitimate, precisely defined search. (*Id*. at p. 375.)

Illustrating the limits of *Bertine*, the Supreme Court in *Florida v. Wells* (1990) 495 U.S. 1 held that the search of a locked suitcase in the trunk of an impounded car was unreasonable as an inventory search because the police agency had no policy with regard to the opening of closed containers. (*Id.* at pp. 4–5.) The court stressed that "standardized criteria or … established routine [citation] must regulate the opening of

5

containers found during inventory searches" to assure that an inventory search does not turn into " 'a purposeful and general means' " of discovering incriminating evidence. (*Id*. at p. 4.)

Defendant argues persuasively that Officer Dorsey exceeded the scope of a lawful inventory search under *Bertine* and *Wells* because removing the dashboard console was inconsistent with the Sheriff's Department protocol. Deputy Dorsey testified that the inventory policy here allowed him to search places where people "commonly" put items of value, including under the seat, the glove compartment, the center console, and the trunk, and it allowed for the opening of "closed containers" within the vehicle. A concealed area behind the dashboard console is not an area where people commonly put items of value, nor is it a closed container, such as a suitcase, box, or backpack. (See *Opperman*, at p. 388, fn. 6 (dis. opn. of Marshall, J.).) Further, there is no evidence that Deputy Dorsey observed anything through the enlarged dashboard gap such as a weapon that would present a danger to the officers. (*Bertine*, *supra*, 479 U.S. at p. 373.) Accordingly, Deputy Dorsey exceeded the scope of the Sheriff's Department protocol by removing the console for investigatory purposes, and the intrusion into the area behind the console cannot be upheld as an inventory search.

The Attorney General argues that the concealed area behind the console "functioned like a 'closed container' " so that it comes within the Sheriff's Department protocol which permitted the search of closed containers in vehicles. But the Attorney General cites no case in which the search of a hidden compartment has been encompassed by an inventory policy permitting the opening of closed containers. The Attorney General analogizes the search here to the inventory search in *United States v. Jackson* (6th Cir. 2012) 682 F.3d 448, where police found a gun on the floor of an SUV under ripped up carpet. The circuit court in *Jackson* found the search, which involved lifting a loose flap of carpet from the floorboard, to be within the policy authorizing a search of " 'all interior … areas' " of a vehicle. (*Id*. at pp. 455–457) The

Attorney General quotes language from *United States v. Ross* (1982) 456 U.S. 798, 821, cited in *Bertine*, that "distinctions … between glove compartments, upholstered seats, trunks, and wrapped packages … must give way to the interest in the prompt and efficient completion of the task at hand." But that passage described a "precisely defined" vehicle search pursuant to a warrant, which "would support a search of every part of the vehicle that might contain the object of the search." (*Ibid.*) It was not referencing a warrantless inventory search, the scope of which is circumscribed by established police protocol.

In our view, the facts of this case are analogous to those in *United States v. Best* (8th Cir. 1998) 135 F.3d 1223 (*Best*) and *United States v. Lugo* (10th Cir. 1992) 978 F.2d 631 (*Lugo*), both involving contraband hidden in a vehicle behind the door panel. In *Best*, the state trooper noticed two car windows were not functioning properly. Using his flashlight, he saw what appeared to be a bag of marijuana in one of the door cavities and proceeded to pull away the door panel. In concluding that the actions exceeded the permissible scope of an inventory search, which was limited to the contents of the vehicle including the opening of any opaque containers, the court explained that the trooper did not have a legitimate interest in seeking out property hidden behind a door panel because the owner would not have a legitimate claim for protection of such property. (*Best*, at p. 1225.)

Similarly, the patrol officer in *Lugo* observed that the passenger door panel had been pulled away from the door, the panel was creased and ajar—" 'about a half inch open' "—and the opening corresponding to where a speaker would be was covered. (*Lugo*, *supra*, 978 F.2d at p. 633.) The officer bent the edge of that cover, and with a flashlight saw a bag lodged in the panel. He bent back the door panel along the existing crease where it was not attached to the door, and retrieved the bag. (*Lugo*, at pp. 633– 634.) The *Lugo* court held that searching behind a door panel was not " 'standard police procedure,' " nor did it serve the purpose of " 'protecting the car and its contents' under any normal construction of those terms" as used in *Opperman*. (*Id*. at pp. 636–637.)

7

The reasoning in *Best* and *Lugo* was expressed in California nearly 50 years ago in *People v. Andrews* (1970) 6 Cal.App.3d 428.[1]  Discussing the right of police to inventory the contents of a lawfully impounded car, including the contents of the trunk, the *Andrews* court explained:  "The inventory must be reasonably related to its purpose which is the protection of the car owner from loss, and the police or other custodian from liability or unjust claim.  It extends to the open areas of the vehicles, including such areas under seats, and other places where property is ordinarily kept, e.g., glove compartments and trunks.  It does not permit a *search* of hidden places, certainly not the removal of car parts in an effort to locate contraband or other property.  The owner having no legitimate claim for protection of property so hidden, the police could have no legitimate interest in seeking it out."  (*Id*. at p. 437.)

## B.    THE DASHBOARD CONSOLE SEARCH WAS SUPPORTED BY PROBABLE CAUSE

In *Arizona v. Gant* (2009) 556 U.S. 332, the United States Supreme Court held that the passenger compartment of an automobile may be searched incident to the arrest of an occupant of the vehicle when the arrestee is unsecured and within reach of the vehicle at the time of the search.  (*Id*. at p. 343 & fn. 4.)  The Supreme Court also held in *Gant* that a warrantless vehicle search incident to an arrest was reasonable under the Fourth Amendment when it was reasonable to believe that evidence of the offense of arrest might be found in the vehicle.  (*Id*. at p. 335.)  Defendant argues that the two-part rule in *Gant* determines whether the search behind the dashboard console here comports with the Fourth Amendment.  But *Gant* recognized "[o]ther established exceptions to the warrant requirement authorizing a vehicle search," including a search based on probable cause to believe that a vehicle contains evidence of criminal activity other than the

_____

[1] *People v. Andrews* was disapproved by the California Supreme Court in *Mozzetti v. Superior Court* (1971) 4 Cal.3d 699.  *Mozzetti* rejected the reasonableness of any warrantless inventory of items in a vehicle under the Fourth Amendment, short of articles in plain sight.  (*Id*. at p. 712.)  But, as we have explained, that view has long since been rejected by the United States Supreme Court.

offense of the arrest.  (*Id*. at pp. 346–347, citing *United States v. Ross*, *supra*, 456 U.S. 798, 820–821.)  The Supreme Court has also held that "[a] vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search."  (*United States v. Johns* (1985) 469 U.S. 478, 484; see also *Michigan v. Thomas* (1982) 458 U.S. 259 [upholding warrantless automobile search of car in police custody following inventory search].)

Defendant does not dispute that the suspicious white powder was found within the scope of a lawful inventory search, or that the dashboard console was visible during that search.  Thus the relevant inquiry here is whether, based upon the totality of the circumstances, " 'there is a fair probability that contraband or evidence of a crime will be found' " behind the dashboard console.  (*People v. Farley* (2009) 46 Cal.4th 1053, 1098, quoting *Illinois v. Gates* (1983) 462 U.S. 213, 238.)  "A 'practical, nontechnical' probability that incriminating evidence [will be found] is all that is required."  (*Texas v. Brown* (1983) 460 U.S. 730, 742.)

Deputy Dorsey, who was trained in recognizing how illegal drugs were packaged and transported, testified that the white powder under the driver's seat was packaged consistent with contraband, and the baggies were indicia of criminal activity supporting a narcotics investigation.  Based on his training and experience, he knew that people use hidden compartments to conceal contraband in vehicles.  He noticed during the inventory search that the dashboard console had been tampered with, and he thought that the area behind the console was being used as a hidden compartment.  At the preliminary hearing approximately two weeks earlier, Deputy Dorsey testified that he had found weapons and narcotics in hidden vehicle compartments, and given the discovery of the baggies under the seat, he believed contraband was hidden behind the dashboard.  The totality of circumstances here provided probable cause to search behind the dashboard console for contraband in connection with defendant's arrest.

9

Defendant contends that the baggies found under the driver's seat could not supply probable cause to search behind the dashboard console because the content of the baggies was unknown and would not have supported an arrest. But failure to immediately identify the suspicious powder did not undermine the fact of its presence relative to the probable cause inquiry—whether evidence of criminal activity would be found behind the dashboard console, not whether defendant was conclusively in possession of illegal drugs. The substance was packaged in a manner consistent with illegal narcotics activity which, together with the tampered dashboard, established probable cause to believe that contraband would be found behind the console.

### III.  DISPOSITION

In light of amendments to Health and Safety Code section 11370.2, subdivision (c) effective January 1, 2018, we vacate the three-year enhancement for a prior narcotics conviction under former Health and Safety Code section 11370.2, subdivision (c), and affirm the judgment as modified.

The superior court clerk is directed to prepare and transmit to the California Department of Corrections and Rehabilitation an amended abstract of judgment reflecting the modified sentence consisting of a total period of incarceration of three years.

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Premo, J.

**H043328 -** *People v Zabala*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court,<br>Case No.: F1348047 |
| Trial Judge: | Hon. Edward Frederick Lee |
| Attorneys for<br>Plaintiff/Respondent:<br>The People | Xavier Becerra<br>  Attorney General of California<br>Gerald A. Engler<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Eric D. Share<br>  Supervising Deputy Attorney General .<br>Jalem Z. Peguero<br>  Deputy Attorney General |
| Attorneys for<br>Defendant/Appellant:<br>Saul Zabala | Gabriel Bassan<br>  Attorney at Law<br>  Under Appointment by the Court of Appeal |